Patricio V. RODRIGUEZ, Plaintiff,

v.

TRANSNAVE, INC. and Transportes
Navieros Ecuatorianos,
Defendants.

No. H–90–3445.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 11, 1993.

Robert D. Bates, Bates & Lee, Houston, TX, for plaintiff.

William M. Jensen, Royston, Rayzor, Vikery & Williams, L.L.P., Houston, TX, for defendants.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending before the Court is the "Motion to Dismiss of Transnave," filed by Defendant Transportes Navieros Ecuatorianos ("Transnave"), on the basis of foreign sovereign immunity and the doctrine of *forum non conveniens*. For the reasons that follow, the motion is DENIED.

Plaintiff Patricio Rodriguez is a resident and citizen of Ecuador. Rodriguez was employed by Transnave an entity organized under Ecuadorian law, as a second engineer aboard the vessel ISLA SALANGO. The SALANGO is a 12,677 gross ton general cargo vessel, flagged in Ecuador, and registered in the Ecuadorian port of Guayaquil.

Plaintiff alleges that he was injured during a fire aboard the SALANGO on October 3, 1989, while it was on a voyage from Yokohama, Japan to Esmeraldes, Ecuador.

The precise location of the vessel during the fire may be in dispute. In his amended complaint Plaintiff claims that the vessel was being "operated offshore" from Honolulu, Hawaii, when he was injured. Transnave maintains that the vessel was located in international waters, approximately 750 nautical miles north-northwest of the Hawaiian Islands, when the Plaintiff was injured. It is undisputed that during the entire voyage the vessel SALANGO called at a United States port only once—at Honolulu, Hawaii on October 7, 1989—in order to provide Plaintiff with additional medical assistance after his injury in the fire. Rodriguez was later brought to Houston, Texas for further medical treatment. The crew employed aboard the SALANGO on October 3, 1989 was entirely of Ecuadorian nationality, and the officers and directors of Transnave are all citizens and residents of Ecuador. Plaintiff brought this suit under the Jones Act, 46 U.S.C.App. § 688, and the general maritime laws of the United States, arguing that his injuries were caused by Transnave's negligence and the unseaworthiness of the SALANGO.

### Foreign Sovereign Immunities Act

■ It is undisputed that Transnave is a legal entity created in 1971 by Ecuadorian Presidential decree, and defined by Ecuadorian law as an "Ecuadorian State Naval Entity which belongs to the National Armed Forces with Judicial Statute." As such, Transnave is an agency or instrumentality of a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA").

■ The FSIA was enacted in 1976, to govern "when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States."[1] Title 28 U.S.C. § 1604 provides (subject to certain international agreements) that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in Sections 1605 to 1607 of this

---

1. H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604.

chapter." Sections 1605–1607 set forth a series of specific exceptions in which a foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States. Section 1605(a)(1) provides that a foreign state shall not be immune from jurisdiction of the courts of the United States in any case "in which the foreign state has waived its immunity either explicitly or by implication, ..." Plaintiff contends that Transnave has waived its claim of immunity in this case. The Court agrees.

Plaintiff filed the suit in October, 1990, against an entity bearing the name of Transnave, Inc., which appears from the record to have been a Florida corporation, and which was served by delivering process to C.T. Corporation System in Houston, Transnave, Inc.'s registered agent for service.[2]

Although Transnave, the Ecuadorian governmental entity, was neither named a defendant in the original case nor served with process, it voluntarily entered an appearance when it filed a Notice of Removal in this Court on November 7, 1990. In its Notice of Removal, Transnave alleged that it "is the defendant" in the case that had been filed in state court, that

> this [federal district] Court has original jurisdiction under the provisions of Title 28 U.S.C. § 1332, and [this action] is one which may be removed to this Honorable Court by Petitioner pursuant to the provisions of Title 28 U.S.C. § 1441(d) because it is a civil action against a foreign state as defined in § 1603(a) of Title 28 of the United States Code inasmuch as Petitioner and Defendant is an agency or instrumentality of the foreign state within the meaning of Title 28 U.S.C. § 1603(b).

The case was thereby removed from state district court to this Court by Transnave itself, which asserted without qualification that this Court "has original jurisdiction" over the case. Moreover, § 1441(d), upon which Transnave relied, entitles a foreign state to remove an action against it to the district court of the United States for the district and division embracing the place where the action is pending, in order to provide a foreign state with a trial by the federal court without a jury.

■ Transnave's assertion that this Court has jurisdiction and Transnave's voluntary actions to enter an appearance, to claim the role of defendant, and to remove the case to this Court for trial by this Court, constitute a waiver under § 1605(a)(1) of any immunity it otherwise might have had under the FSIA. Moreover, it cannot be said that Transnave was required first to remove the case to federal court in order to assert its right under FSIA. The immunity set forth by § 1604 applies to the jurisdiction "of the courts of the United States and *of the States.*" Had Transnave been served, or had it determined to intervene as the party that actually should have been named as defendant simply to claim foreign sovereign immunity, it could have done so in the State court where the action was pending. The State courts no less than the federal courts must respect foreign sovereign immunity under 28 U.S.C. § 1604. Moreover, the removal papers filed by Transnave made no reference whatever to any claim of immunity under FSIA; to the contrary, as noted above, Transnave claimed that this Court has original jurisdiction of this particular action in which Transnave "is the Defendant."

■ Several days after the removal, Defendant filed an Answer. Among other defenses, Transnave pled "the benefits and protections" of FSIA, and specifically pled "immunity from suit." Once waived, FSIA does not allow the foreign state to reassert immunity under the Act. Section 1605(a)(1) specifically provides that the foreign state shall not be immune where it has waived its immunity, "notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." This provision precludes Transnave from with-

---

**2.** By separate Order also signed this day Transnave, Inc. is dismissed on the joint motion of Plaintiff and Transnave, Inc.

drawing its waiver of immunity, even a few days later, after it has voluntarily appeared to invoke the jurisdiction of this Court, declared that this Court has original jurisdiction to try the case, and has removed the matter from State court to federal court under a statute that entitles defendant to a trial by the Court without a jury.

In *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir.1985), the Court took note of the legislative history regarding implied waivers in the following language:

> The legislative history of the FSIA gives three examples of cases in which courts have found implied waivers: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6617; S.Rep. No. 1310, 94th Cong., 2d Sess. 18. Since the FSIA became law, courts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity.

761 F.2d at 377.

The legislative history presumably is silent on circumstances as unusual as exist here—namely, the *voluntary* intervention and appearance of a foreign state that has not been sued or served with process, but which intervenes to claim the role of defendant and to invoke the jurisdiction of the Court. Such assertive action by Defendant implies a waiver of immunity that is at least the equivalent of omitting an assertion of immunity in a responsive pleading. Once the waiver has been made, Transnave cannot withdraw it.

Although Transnave's waiver was complete and irrevocable from the instance it declared and invoked the jurisdiction of this Court, much of what followed would also confirm an implied waiver of immunity by Transnave. For example, it did not file its Motion to Dismiss until November 16, 1992, more than two years after it removed the case to this Court. During those two years Defendant has participated in preparation of the case for trial pursuant to at least half a dozen scheduling orders of the Court, including four successive dates for trial docket call. All of the enlargements of time for the trial docket call and for the filing of a Joint Pretrial Order were on motions in which Transnave was a moving party. In October 1991 Transnave named a number of expert witnesses it expected to call at trial, only two out of nine of whom appear to have been from Ecuador; at the same time it represented to the Court that "[d]iscovery is continuing in this matter," that Defendant may need "to designate additional expert witnesses," and that Defendant could not anticipate "at this juncture whether it will be necessary to designate a rebuttal expert at trial." As recently as September 9, 1992, Transnave and Plaintiff jointly represented that the parties "have worked diligently at gathering all relevant and pertinent information regarding the facts and legal issues involved in this case," and went on to move for an enlargement of time "to provide the parties additional time to gather all the relevant and pertinent facts and information regarding this case in order that a proper evaluation can be made regarding settlement, pretrial dispositive motions (*forum non conveniens*) or trial."

On September 14 and again on September 17, 1992, this Court set the case for trial docket call on January 8, 1993, and included in the latter Order the following:

> This case has been pending for nearly two years. The original Scheduling Order already has been extended once upon a joint motion of the parties. Pursuant to that Order dated March 22, 1992, discovery was required to have been completed by June 26, 1992, and all other scheduling dates have passed except for the filing of the Joint Pretrial Order, which is due October 28, 1992. The docket call set by Judge Harmon for 1:30 p.m. November 13, 1992, is canceled. **The case is set for docket call on January 8, 1993, at 4:00 p.m.**

In the event the parties file any additional motion for reopening of the Scheduling Order, the motion must recite the specifics of how the parties have heretofore worked diligently to prepare the case, giving specifics, and the particular tasks yet to be completed must be specified together with the exact dates by when such shall have been completed.

In October, 1992, Transnave filed an "Unopposed Motion for Extension of Motion Deadline," reciting the pretrial efforts of the parties, explaining difficulties encountered, and asking for an extension of the deadline for the filing of motions, which the Court granted. Not until November 16, 1992, did Transnave file its Motion to Dismiss which is under review here.

On December 3, 1992, one day before the Joint Pretrial Order was due to be filed as had been directed by the Court in September, 1992, the parties filed a Motion to Extend the Time until January 8, 1993, which the Court also allowed, but without any postponement of the trial docket call also set for January 8, 1993.

For a foreign state to participate in trial preparations for a period of more than two years before filing a motion to dismiss on grounds of foreign sovereign immunity may, in and of itself, constitute an implied waiver of that immunity. The fact that foreign sovereign immunity is recited as a defense in an answer to Plaintiff's complaint, if not urged to the Court in a timely fashion by a motion to dismiss, hardly seems enough. More than two years later (and here, more than three years after the accident), if the case is dismissed, the Plaintiff may be severely prejudiced in his efforts to bring an action in a foreign venue. Meanwhile, judicial resources have regularly been required to manage the case throughout its pretrial preparations.

■ A foreign sovereign enjoys immunity only if it moves in a timely way for its dismissal on those grounds. It cannot for whatever its reason dally in the courts of the United States for more than two years and then, on the eve of trial, cry "King's X." If Transnave did not waive by implication any immunity when it first voluntarily entered an appearance and admitted this Court's jurisdiction in its Notice of Removal, the Court finds that its subsequent participation in discovery and preparations for trial in this Court for over two years, without first urging by motion a claim of foreign sovereign immunity, served by implication to waive any immunity.

### Forum Non Conveniens

■ A *forum non conveniens* analysis involves a three step inquiry. First, the Court must determine whether there exists another forum that is available to the litigants and would provide an adequate remedy to the prevailing party. Second, the analysis requires a balancing of "private interest" factors. These include such factors as (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained. While reviewing the private interest factors, the Court should also consider whether the Defendant's Motion to Dismiss was filed in a timely manner. And third, the analysis may involve the consideration of certain "public interest factors." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *In Re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987), *affirmed in part, vacated in part,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *vacated sub nom., Pan Am World Airways, Inc. v. Lopez,* 883 F.2d 17 (5th Cir.1989).

■ In the case at bar, a Motion to Dismiss on grounds of *forum non conveniens* was not filed until after two years following the filing of this suit. As observed above, the parties have undertaken substantial trial preparations in this jurisdiction, have identified to each other their

expert witnesses, and have marshaled the facts and identified the witnesses who are required for the trial to go forward.

Turning to the particular steps of the analysis, Defendant in its motion for dismissal has *asserted* a conclusion that Ecuador "provides both an adequate and alternative forum," but Defendant has presented no proof, facts, details, or other affirmative demonstration that Plaintiff in fact would have a remedy under Ecuadorian law nor that Plaintiff's action, if now filed in Ecuador, would not be barred by limitations due to the long passage of time since the accident and since suit was filed in this country.

Second, although Defendant has indicated that at least some proof may be more readily obtainable in Ecuador, it has failed to demonstrate on balance that Ecuador is to be preferred to the United States. Indeed, nearly all of the expert witnesses identified by Defendant appear to be Americans; and of those who have been named, there are as many from Houston as from Ecuador. Likewise, two out of four of Plaintiff's expert witnesses appear to reside in Harris County, Texas, and only one in Ecuador in addition to a sanitary officer aboard the vessel upon which Plaintiff was injured. While some difficulty must be encountered in procuring witnesses for a trial such as this in whatever venue may be chosen, on balance it would seem that no greater difficulties exist in this forum than would exist in Ecuador. Moreover, because the case has been pending here for more than two years, and the pretrial preparations have been conducted under the rules of this jurisdiction, it must be concluded that trial more readily can be completed here, and at less expense to the parties, than by dismissing the cause at this late date and sending the parties to begin all over again, if they can, in a foreign venue. The private interest factors, certainly as of this date, favor denial of the Motion to Dismiss.

■ Finally, turning to public interest factors, the heavy caseload of the Southern District of Texas and the likelihood that Ecuadorian law may govern this case would be factors that favor dismissal. On the other hand, it is also in the public interest not to permit parties to add to the caseloads of this District, and to the pretrial management work of these courts, by using these courts for more than two years of trial preparations and only then, on the eve of trial, by moving to dismiss the case *not* because it is concluded, but because the defendant wants to put the plaintiff to the burden of starting over again in a foreign venue. *Forum non conveniens* motions are required to be filed in a timely fashion, at least in part because the public has an interest in courts not being used for the delay of justice but rather for the just, speedy, and inexpensive determination of every action. *See* Fed.R.Civ.P. Rule 1.

Accordingly, the Court finds on balance, and weighing all of the several competing considerations, that this action should not be dismissed on grounds of *forum non conveniens.*

### Conclusion

Defendant Transnave's Motion to Dismiss is DENIED.