**D.W. TALBOT, et ux.**

v.

**SAIPEM A.G., et al.**

Civ. A. No. G–93–437.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 28, 1993.

Ernest H. Cannon, Ernest Cannon & Associates, Houston, TX, for plaintiffs.

Timothy K. Borchers, Eugene J. Silva, Vinson & Elkins L.L.P., Houston, TX, for defendants.

Robert M. Schick, Vinson & Elkins, Houston, TX, for Cabinda Gulf Oil Company, A Subsidiary of Chevron U.S.A., Inc., Durham Inspection Service.

## ORDER DENYING REMAND

KENT, District Judge.

This is a lawsuit under the Jones Act for injuries sustained by the Plaintiff D.W. Talbot aboard a vessel.[1] Talbot originally filed this action in the 149th Judicial District Court of Brazoria County, Texas, where Defendant Saipem S.p.A. ("Saipem") filed two answers, a motion to dismiss, and a motion to transfer. Four months after the commencement of the case Saipem removed the action to this Court based on its status as a "foreign state" under 28 U.S.C. § 1441(d), as defined by the Foreign Sovereign Immunities Act ("FSIA"). Before the Court is Plaintiffs' Motion to Remand.

*FSIA Removal*

■ 28 U.S.C. § 1441(d) provides:
Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States....

This provision grants a foreign state an absolute right of removal, subject to the liberal time limitations discussed below. *In re Delta America,* 900 F.2d 890, 893 (6th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).

■ The FSIA defines "foreign state" to include "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality" is defined in turn to include any corporation, a majority of whose shares or other ownership interest is owned by a foreign state, which is neither a citizen of the United States nor created under the laws of any third country. 28 U.S.C. § 1603(b). Saipem meets this definition because it is incorporated under the laws of Italy, it has its principal office in Italy, and 81% of its shares are owned by the Italian government.[2] Therefore, Saipem is entitled to removal.

*FSIA Jurisdiction and Waiver*

Plaintiff first argues that Saipem has waived its right to remove this action under

1. Talbot has cautiously avoided mentioning, in any filing, where his accident took place. The presence of Cabinda Gulf Oil Company as a Defendant in this case, however, points to Angola as a likely situs.

2. 40.74% of Saipem shares are owned by AGIP S.p.A., while 40.31% of the shares are owned by Snam S.p.A. 100% of the shares of AGIP and over 99% of the shares of Snam are, in turn, owned by ENI S.p.A. Finally, ENI is 100% owned by the Ministry of Treasury of the Republic of Italy. That Saipem's ownership by the Italian government is indirect is immaterial. *See O'Connell Machinery Co. v. M.V. Americana,* 734 F.2d 115, 116–17 (2nd Cir.), *cert. denied,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984) (involving multi-tiered government ownership of Italian corporation); *Trump Taj Mahal v. Construzioni Aeronautiche Giovanni,* 761 F.Supp. 1143, 1149–50 (D.N.J.1991), *aff'd,* 958 F.2d 365 (3rd Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992) (same).

the FSIA because it has waived any potential sovereign immunity. However, whether Saipem is entitled to sovereign immunity and whether Saipem is entitled to removal are two entirely distinct issues. Even if Saipem is not entitled to assert sovereign immunity as a defense, it is entitled to a federal forum for the adjudication of this claim. *See* 900 F.2d at 893.

Nonetheless, this Court must now consider the immunity issue because the FSIA is the sole basis under which this Court can exercise subject matter jurisdiction over a foreign state. *Argentine Republic v. Amerada Hess Shipping Co.,* 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989); *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1064 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). Under 28 U.S.C. § 1330(a), the jurisdictional statute corresponding to the FSIA, this Court is vested with subject matter jurisdiction over a foreign state only if the state is not entitled to immunity. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983); *Jones,* 954 F.2d at 1065. "At the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions [to sovereign immunity] applies...." *Verlinden,* 461 U.S. at 493–94, 103 S.Ct. at 1971–72.

By demonstrating that it is a foreign state within the meaning of the FSIA, Saipem has made a prima facie case that it is entitled to immunity. *Walter Fuller Aircraft Sales v. Republic of the Philippines,* 965 F.2d 1375, 1383 (5th Cir.1992). Therefore, jurisdiction over neither Saipem nor any other party has attached in this Court until it is determined that the foreign sovereign lacks immunity under the FSIA. *Jones,* 954 F.2d at 1065.

The first exception to sovereign immunity under the FSIA provides that, unlike other questions of subject matter jurisdiction, sovereign immunity can be waived "either explicitly or by implication." 28 U.S.C.

§ 1605(a)(1). An implicit waiver will be found when a foreign entity has demonstrated a conscious decision to take part in litigation in the United States by failing to raise the sovereign immunity defense despite the opportunity to do so. *See Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 378 (7th Cir.1985). The legislative history of this statute includes this example of such waiver: "An implicit waiver would ... include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617. At least three circuits have affirmatively indicated their willingness to follow this example of the statute's intended construction. *See Foremost–McKesson v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990); *Frolova,* 761 F.2d at 378; *Canadian Overseas v. Compania de Acero,* 727 F.2d 274, 277 (2nd Cir.1984); *see also Rodriguez v. Transnave, Inc.,* 810 F.Supp. 194, 196 (S.D.Tex.1993) (finding waiver of the sovereign immunity defense through defendant's appearing in state court and removing to federal court without raising immunity issue); *United States v. Crawford Enterprises, Inc.,* 643 F.Supp. 370, 378–79 (S.D.Tex. 1986), *aff'd in part, dism'd in part,* 826 F.2d 392 (5th Cir.1987) (finding waiver of sovereign immunity defense to contempt charges by failing to assert it in response to show cause order). This Court will construe the exception likewise. By filing both an answer and amended answer to this lawsuit in state court and opposing this motion to remand without asserting the defense of sovereign immunity, Saipem has permanently waived any possibility of raising the issue at some later date. *See Rodriguez,* 810 F.Supp. at 197. Therefore, this Court has subject matter jurisdiction over this lawsuit.[3]

*Timeliness of Removal*

Plaintiff Talbot next contends that this case should be remanded because Saipem did not file its Notice within thirty days of the commencement of the lawsuit, as re-

---

**3.** This holding also determines that this Court has personal jurisdiction over Saipem if proper service was made under the FSIA. *See* 28 U.S.C. § 1330(b).

quired by 28 U.S.C. § 1446(b). However, 28 U.S.C. § 1441(d) provides:

> Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

The statute does not require "good cause," but only "cause." *Tennessee Gas Pipeline Co. v. Continental Cas. Co.*, 814 F.Supp. 1302, 1304 (M.D.La.1993). By its plain text, it would appear that the provision would permit the expansion of time for *any* reason, including counsel's negligence. The courts which have applied this section, however, have instead read it to liberally allow the enlargement of time to further the purpose of providing a federal forum for foreign states, when the rights of the parties and judicial economy would not be prejudiced thereby. Hence, untimely removal is generally allowed when there has been little prior activity in the state court. *See, e.g., Refco, Inc. v. Galadari*, 755 F.Supp. 79, 83–84 (S.D.N.Y.1991) (cause shown despite five year delay, where there had been little progress in state court); *Fabe v. Aneco Reinsurance Underwriting Ltd.*, 784 F.Supp. 448, 451–52 (S.D.Ohio 1991) (removal allowed despite five month delay); *Leith v. Lufthansa German Airlines*, 793 F.Supp. 808, 810–11 (N.D.Ill.1992) (late removal allowed); *but see Boland v. Bank Sepah–Iran*, 614 F.Supp. 1166, 1169 (S.D.N.Y.1985) (removal petition five years after commencement is untimely where there has been extensive motion practice in state court).

Saipem filed its Notice of Removal a little over four months after commencement of the state court action. No depositions have been taken. No motions have been argued or ruled upon. No trial date has been set. No scheduling conference has been held. In order to further the underlying purposes of the FSIA—to provide a federal forum for a foreign state entity in the interest of comity—this Court will allow removal.

*Jones Act Non–Removability*

[9] For the sake of completeness, the Court notes that Talbot has *not* objected to removal on the basis that Jones Act claims are simply not removable. Generally, of course, 28 U.S.C. § 1445(a) (as adopted by the Jones Act) provides that a civil action in any State court under the Jones Act "may not be removed to any district court of the United States." *See Pate v. Standard Dredging Corp.*, 193 F.2d 498, 500 (5th Cir. 1952). On the facts of this case, however, § 1445 directly conflicts with § 1441(d), which provides that any civil action brought against a foreign state entity *may* be removed.

This Court has found no authority addressing which of these provisions would govern the removal of a Jones Act suit against a foreign state. As in this case, the issue has not been raised in reported removal cases with similar facts, the parties apparently having presumed that the FSIA is preemptive. *See, e.g., Rodriguez, supra; Zernicek v. Petroleos Mexicanos*, 614 F.Supp. 407 (S.D.Tex. 1985), *aff'd*, 826 F.2d 415 (5th Cir.1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). In light of the purposes of the more recent FSIA removal statute, this Court would find that it does indeed prevail. Congress enacted § 1441(d) because "[i]n view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts." H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.C.C.A.N. 6604, 6631–32. These purposes would not be served by permitting the possibility of removal to depend on the particular type of claim at issue. Therefore, claim-specific prohibitions to removal such as 28 U.S.C. § 1445 do not operate to preclude removal by a foreign state under § 1441(d).

Moreover, the Court notes that Talbot has waived the right to invoke § 1445 as grounds for remand by failing to raise it in the present motion. *See Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116 (5th Cir.1987) (en banc) (where Jones Act plaintiff fails to object to removal, district court may determine whether he waived right to invoke § 1445(a)).

*Style*

The Court notes that Defendant Saipem labeled its Response with an incorrect Civil

Action Number. Saipem is ORDERED to use the correct number on all future pleadings in this Court. This Court will not consider future pleadings which are directed to the wrong file.

\* \* \*

For the reasons stated above, Plaintiffs' Motion to Remand is DENIED. It is further ORDERED that the parties file no further pleadings on the issues discussed herein in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.