IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40800
_____


VALERO ENERGY CORPORATION; VALERO MARKETING AND SUPPLY
COMPANY

                        Plaintiffs - Appellees

v.

EMPRESA ESTATAL PETROLEOS DEL ECUADOR, also known as
Petroecuador

                        Defendant - Appellant
_____

        Appeal from the United States District Court
            for the Southern District of Texas
                      (G-99-CV-88)
_____
                      June 5, 2000

Before KING, Chief Judge, and GARWOOD and DeMOSS, Circuit Judges.

PER CURIAM:[*]

        Defendant-Appellant Empresa Estatal Petroleos Del Ecuador

appeals from a district court order remanding this case to the

Texas state court from which it was removed.  We dismiss for want

of appellate jurisdiction.


                I.  FACTUAL AND PROCEDURAL HISTORY

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This appeal centers around the removal and remand of an action for breach of contract and injunction. A proper understanding of the issues involved requires that we begin by setting forth some general legal propositions on which we take no position. 28 U.S.C. § 1603 defines a "foreign state" for purposes of the Foreign Sovereign Immunities Act (the "FSIA").[1] Defendant-Appellant Empresa Estatal Petroleos Del Ecuador ("PetroEcuador") argues that it is a "political subdivision" of a foreign state under § 1603, and Plaintiffs-Appellees Valero Energy Corporation and Valero Marketing and Supply Company (collectively "Valero") assert that PetroEcuador is an "agency or instrumentality" of a foreign state. For our purposes, the distinction matters because, as provided in 28 U.S.C. § 1608, the requirements for serving process on an entity like PetroEcuador

---

[1] Section 1603 provides, in pertinent part:

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
(b) An "agency or instrumentality of a foreign state" means any entity--
    (1) which is a separate legal person, corporate or otherwise, and
    (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
    (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603 (1994).

2

turn, in part, on whether the entity is a "political subdivision"

or an "agency or instrumentality."[2]

---

[2] Section 1608 provides, in pertinent part:

(a)  Service in the courts of the United States and of the
     States shall be made upon a foreign state or political
     subdivision of a foreign state:
     (1)  by delivery of a copy of the summons and complaint
          in accordance with any special arrangement for
          service between the plaintiff and the foreign
          state or political subdivision; or
     (2)  if no special arrangement exists, by delivery of a
          copy of the summons and complaint in accordance
          with an applicable international convention on
          service of judicial documents; or
     (3)  if service cannot be made under paragraphs (1) or
          (2), by sending a copy of the summons and
          complaint and a notice of suit, together with a
          translation of each into the official language of
          the foreign state, by any form of mail requiring a
          signed receipt, to be addressed and dispatched by
          the clerk of the court to the head of the ministry
          of foreign affairs of the foreign state concerned,
          or
     (4)  if service cannot be made within 30 days under
          paragraph (3), by sending two copies of the
          summons and complaint and a notice of suit,
          together with a translation of each into the
          official language of the foreign state, by any
          form of mail requiring a signed receipt, to be
          addressed and dispatched by the clerk of the court
          to the Secretary of State in Washington, District
          of Columbia, to the attention of the Director of
          Special Consular Services--and the Secretary shall
          transmit one copy of the papers through diplomatic
          channels to the foreign state and shall send to
          the clerk of the court a certified copy of the
          diplomatic note indicating when the papers were
          transmitted.

     . . . .

(b)  Service in the courts of the United States and of the
     States shall be made upon an agency or instrumentality
     of a foreign state:

3

On July 15, 1998, Valero filed a petition in Texas state court against PetroEcuador for breach of contract and injunction. On that same date, Valero received an ex parte temporary restraining order ("TRO").  Valero claims that it soon thereafter faxed a copy of the petition and TRO to PetroEcuador.  On September 30, 1998, Valero filed its First Amended Original Petition (the "Complaint") in state court.  Valero claims that the Complaint was faxed to PetroEcuador the same day.  On October 12, 1998, Valero served the Attorney General of the State of Texas with citation and a copy of the Complaint.  Valero avers

(1)  by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2)  if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3)  if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--

(A)  as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B)  by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C)  as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608 (a) & (b) (1994).

4

that because PetroEcuador is an "agency or instrumentality," this constituted formal service of process under § 1608(b). The Attorney General forwarded the citation and complaint to PetroEcuador, which admits to having received them on October 23, 1998. Valero claims that under § 1608(b), PetroEcuador was formally served, at the latest, on this date. PetroEcuador, on the other hand, asserts that because it is a "political subdivision," it has yet to receive formal service of process under § 1608(a).

On December 8, 1998, PetroEcuador filed a Notice of Removal in the United States District Court for the Southern District of Texas, Houston Division. The following day, it filed a motion to dismiss for lack of personal jurisdiction due to improper service of process. On January 4, 1999, Valero filed an opposition to PetroEcuador's motion to dismiss and moved for remand due to untimely removal or, alternatively, to have the case transferred to the Galveston Division. On January 6, 1999, PetroEcuador filed a Notice of Filing Removal in state court. Valero argues that PetroEcuador did not complete the removal process until this date.[3]

---

[3] Valero relies on 28 U.S.C. § 1446(d) for this argument. Section 1446(d) provides:

> Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed

5

The court found that PetroEcuador's removal was untimely but that cause existed for its untimeliness.[4]  The court expanded the time limitation for removal accordingly and explained in a written order:

> Pursuant to [§ 1441(d)], courts "liberally allow the enlargement of time to further the purpose of providing a federal forum for foreign states, when the rights of the parties and judicial economy would not be prejudiced thereby." [Talbot v. Saipem, A.G., 835 F. Supp. 352, 355 (S.D. Tex. 1993)].
>
> Petroecuador proffers several reasons for its delay. It contends that the Chief of Judicial Process was not aware of the fax transmissions, that the transmissions were not translated, and that the documents were not served through what it perceives as the normal channels under the FSIA. Although these reasons might not constitute "good cause," the Court concludes that sufficient "cause" has been presented.
>
> With regards to prejudice, where little prior activity has occurred in the state court, removal is generally allowed.  Id. (citing cases).  As in Saipem, Petroecuador filed its notice of removal only several months late.  In fact, Petroecuador provided its notice of removal to Valero

no further unless and until the case is remanded.

28 U.S.C. § 1446(d) (1994).

[4] When a foreign state is involved, the time for removal may, under certain circumstances, be enlarged:

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending.  Upon removal the action shall be tried by the court without jury.  Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

28 U.S.C. § 1441(d) (1994).

6

> a mere forty-three days after the case had been filed. Also, as in <u>Saipem</u>, no depositions or motions had been argued or ruled upon; nor had a scheduling conference or trial date been set. Accordingly, the Court concludes that Valero will not be prejudiced and that this court has subject matter jurisdiction over the lawsuit.

Order entered February 8, 1999, at 3 [hereinafter "Houston Order"]. In the same order, the court determined that the case had been removed to the wrong division and transferred it to the Galveston Division. See <u>id.</u> at 4.

About two-and-a-half months after the case was transferred to the Galveston Division, Valero moved the district court to reconsider the motion to remand. The district court reconsidered the motion and remanded the case. It first decided that "removal was not effective until January 6, 1999, when PetroEcuador filed its Notice of Removal with the state court." Order entered June 3, 1999, at 1 n.1 [hereinafter "Galveston Order"]. The court then determined that PetroEcuador's removal was untimely and that it had not established "cause" for its untimeliness. See <u>id.</u> at 4-5. The court concluded, "Accordingly, the Court holds that this was untimely removed, and because this Court therefore <u>LACKS SUBJECT MATTER JURISDICTION</u>, the case is <u>REMANDED</u> to the Court in which it was originally brought." <u>Id.</u> at 5. As a result of its determination that it lacked subject matter jurisdiction, the court did not reach PetroEcuador's Motion to Dismiss for Lack of Personal Jurisdiction. PetroEcuador timely appealed from the Galveston Order on July 2, 1999.

Valero filed a motion to dismiss and to assess costs and attorney's fees against PetroEcuador for a frivolous appeal under Federal Rule of Appellate Procedure 38. Valero's motion has been carried with the case.

## II. DISCUSSION

28 U.S.C. § 1447(c) provides, in part, that a remand motion based on "any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . . If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Section 1447(d) relatedly provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." The applicability of § 1447(d) is limited to those cases remanded pursuant to § 1447(c). See Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 345-46 (1976). "As long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction–the grounds for remand recognized in § 1447(c)–a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)." Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127-28 (1995).

8

PetroEcuador advances several arguments in support of its contention that § 1447(d) does not preclude our review of the remand order in this case. Initially, it argues that the remand order does not fall under § 1447(c) because it was not based upon a defect in removal procedure. According to PetroEcuador, it received an enlargement of time in which to remove, pursuant to § 1441(d); therefore, its removal was timely at the time it removed, and to come under § 1447(c), defects in removal must exist at the time of removal. PetroEcuador also asserts that the Galveston Order, which ordered the case remanded, granted Valero's motion to reconsider, rather than its original motion to remand. Valero's original motion to remand was denied by the district court in the Houston Order. PetroEcuador argues that because the Galveston Order was not in response to a timely filed motion to remand, the remand order was not based on a ground recognized in § 1447(c), and we are not precluded from reviewing the order by § 1447(d). Finally, PetroEcuador argues that § 1441(d) allows an enlargement of time to remove "at any time," and we can therefore enlarge the time allowed for removal and review the Houston Order.

We need not reach any of these arguments, however, because we disagree with PetroEcuador's fundamental characterization of the Galveston Order. PetroEcuador begins by pointing out that both parties agree that PetroEcuador is a foreign state under § 1603. They simply disagree whether PetroEcuador is a

9

"political subdivision" or an "agent or instrumentality."

Generally, 28 U.S.C. § 1330(a) grants the district courts original jurisdiction over suits against foreign sovereigns.[5] According to PetroEcuador, the district court here, therefore, enjoyed subject matter jurisdiction. The statement in the Galveston Order that the district court lacked subject matter jurisdiction was simply a mistake; the district court really remanded the case based upon untimely removal.[6] PetroEcuador states "that the Order granting Plaintiffs' Motion to Reconsider was not based on a lack of subject matter jurisdiction . . . . Instead, the District Court apparently believed that the earlier . . . extension of time was improvident. Accordingly, it

---

[5] The statute provides, in pertinent part, that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) . . . ." 28 U.S.C. § 1330(a) (1994).

[6] PetroEcuador cites numerous cases in support of its proposition that "[t]he District Court's label of description of its Order does not bind this Court–rather this Court bases its rulings on the substance and effect of the Order." PetroEcuador's Brief at 16. The cited cases that do not deal with remand orders are unpersuasive. Those dealing with remand orders do not stand for the proposition put forward by PetroEcuador. In re Digicon Marine, Inc., 966 F.2d 158, 160 (5th Cir. 1992), stands for the proposition that the basis for remand stated in the district court's original remand order controls over the district court's description of the remand order in its subsequent order on reconsideration. Tillman v. CSX Transp., Inc., 929 F.2d 1023 (5th Cir. 1991), stands for the unremarkable proposition that, "even if the trial court neither states as grounds for remand the specific words of § 1447(c) nor cites the statute itself, the order is unreviewable if, by substantially similar language, it is evident that the court intends to remand for the grounds recited in § 1447(c)." Id. at 1027.

10

retracted the enlargement and remanded on that, non-jurisdictional basis." PetroEcuador's Brief at 16. PetroEcuador concludes that, because the Houston Order remanded the case based on a non-§ 1447(c) procedural defect -- rather than a jurisdictional defect -- our appellate jurisdiction is not defeated.

The Galveston Order states that the case "was untimely removed, and . . . this Court [the district court] therefore LACKS SUBJECT MATTER JURISDICTION . . . ." Galveston Order at 5. PetroEcuador's interpretation of the order is understandable considering the intertwined procedural and jurisdictional bases for the district court's decision to remand. A careful reading of the Galveston Order reveals, however, that the district court concluded that improper removal divested it of subject matter jurisdiction. The district court therefore remanded the case, at least in part, because it believed that it lacked subject matter jurisdiction. Section 1447(d) precludes us from reviewing a district court's remand order entered pursuant to 28 U.S.C. § 1447(c), "even if the remand order is clearly erroneous." Soley v. First Nat'l Bank, 923 F.2d 406, 408 (5th Cir. 1991). A remand order based on lack of subject matter jurisdiction is entered pursuant to § 1447(c) and is therefore unreviewable. See In re Shell Oil Co., 932 F.2d 1518, 1520 n.5 (5th Cir. 1991) ("[R]emand orders based on lack of subject matter jurisdiction are clearly unreviewable."). We have explained before that "we

11

will only review remand orders if the district court affirmatively states a non-1447(c) ground for remand." Soley, 923 F.2d at 408 (internal quotation marks omitted). We will not review a remand order if "the district court remanded, at least in part, for lack of subject matter jurisdiction." Mobil Corp. v. Abeille General Ins. Co., 984 F.2d 664, 666 (5th Cir 1993).

PetroEcuador's argument that, in a case such as this, we should look past the erroneous jurisdictional ground for remand and examine whether the underlying procedural ground is really based upon § 1447(c) is inviting. Our precedent requires, however, that we reject that argument. Once the district court arrives at the conclusion that it lacks subject matter jurisdiction, the path it traveled to arrive at that point becomes irrelevant; pursuant to § 1447(d) the jurisdictional determination divests this court of appellate jurisdiction. Despite our conclusion that we lack appellate jurisdiction to address this appeal, however, certain other of PetroEcuador's arguments warrant comment.

First, PetroEcuador argues that we have jurisdiction to determine whether it was ever properly served with process. PetroEcuador's concern seems to be that Valero will argue in state court that process was properly served, otherwise the district court could not have determined that removal was untimely. PetroEcuador argues that we may review a decision of

12

the district court that is separable from the remand order, and the service of process question is just such a decision.

We begin by noting that the service of process question was tied to PetroEcuador's Motion to Dismiss for Lack of Personal Jurisdiction. The district court, faced with what it considered to be two jurisdictional questions -- that of personal jurisdiction and that of subject-matter jurisdiction -- opted to address the question of subject-matter jurisdiction first.[7] Finding that issue dispositive, the district court declined to reach the issue of personal jurisdiction. The district court's decision to address the question of subject-matter jurisdiction first was entirely appropriate. Cf. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter . . . .").

PetroEcuador correctly asserts, however, that, even if a case is properly remanded pursuant to § 1447(c), we may review decisions of the district court that are separable from the remand order. See Angelides v. Baylor Coll. of Med., 117 F.3d

---

[7] The district court, citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999), stated that it would "exercise its discretion to decide the Motion to Reconsider first, thereby determining whether the case is properly before it prior to deciding personal service questions." Galveston Order at 1-2. We recognize that the Motion to Reconsider dealt with the timeliness of removal, but, as we have stated, the district court here saw the question of timely removal as one of subject-matter jurisdiction.

13

833, 837 (5th Cir. 1997). A decision is separable if it precedes the remand order in logic and fact and is conclusive. "An order is conclusive if it will have the preclusive effect of being functionally unreviewable in the state court." Id. (internal quotation marks omitted). Here, the district court's decision to remand was jurisdictional, leaving the state court free to examine, or reexamine as the case may be, any question regarding service of process, unhindered by the decision of the district court. See id. Because any decision the district court may have reached in this regard is not binding on the state court, that decision is not conclusive and is, therefore, unreviewable in this court.

Second, PetroEcuador argues that the district court's decision to withdraw the prior enlargement of time to remove is reviewable because that decision was prior in logic and fact to its decision to remand and is effectively unreviewable in state court. The district court's decision to withdraw the prior enlargement of time was simply a step in its decision to remand. We will not, as PetroEcuador seems to suggest we should, indirectly review the district court's unreviewable remand order by scrutinizing the court's decisions that formed the basis for its determination that remand was appropriate. Just as § 1447(d) prevents us from reviewing directly the district court's decision to remand, it likewise prevents us from reviewing that decision

14

through some backdoor, as PetroEcuador suggests.  To do so would negate the clear directive of § 1447(d).

Finally, PetroEcuador argues that Congress manifested a preference for federal courts to hear cases involving foreign states.  According to PetroEcuador, we should therefore take the steps necessary to ensure its access to the federal courts.  We agree that Congress, in enacting the FSIA, intended for foreign sovereigns to have access to federal courts.  As we have explained previously, however, that access is not absolute.

> Section 1447(d) predated FSIA and its removal provision, but Congress made no exception for appellate review of a remanded FSIA case, as it has done for civil rights and FDIC cases.  Relatedly, in waiving the sovereign immunity of the United States, Congress did not provide a [Federal Tort Claims Act] exception to § 1447(d) and this court has refused to create one. Mitchell v. Carlson, 896 F.2d 128, 131 (5th Cir.1990).  The FSIA has no such exception and, as in Mitchell, we must adhere to the broad application of § 1447(d).

Mobil, 984 F.2d at 666 (internal quotation marks and some citations omitted).  When, as here, we determine that the district court remanded the case pursuant to § 1447(c), the FSIA provides no exception to the mandate of § 1447(d).[8]

---

[8] Valero has filed a motion in this court requesting that we order PetroEcuador to pay Valero twice its costs and attorney's fees for a frivolous appeal.  Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  "An appeal is frivolous if it relies on legal points that are not arguable on their merits." Walker v. City of Bogalusa, 168 F.3d 237, 241 (5th Cir. 1999) (internal quotation marks omitted).  We disagree with Valero's contention that PetroEcuador's legal

15

### III. CONCLUSION

The remand order in this case having been entered pursuant to § 1447(c), we are without appellate jurisdiction to entertain an appeal from it.  Valero's motion to DISMISS the appeal for want of appellate jurisdiction is GRANTED.  Its motion to award costs and attorney's fees is DENIED.

---

points are not arguable on the merits.  PetroEcuador's argument that we should look past the jurisdictional conclusion and focus on the underlying procedural issues has appeal.  Ultimately, however, we conclude that we are constrained by the statute and our precedent.  The legal points raised by PetroEcuador are nonetheless, in our minds, arguable on their merits.