**Clifford ACREE, et al., Plaintiffs,**

v.

**REPUBLIC OF IRAQ,
et al., Defendants.**

**No. CIV.A.02–0632 RWR.**

United States District Court,
District of Columbia.

Aug. 6, 2003.

---

96

Stephen A. Fennell, Steptoe & Johnson LLP, Washington, DC, for Plaintiffs.

Joseph H. Hunt, US Department of Justice Civil Division Federal Programs Branch, Washington, DC, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

ROBERTS, District Judge.

Plaintiffs, former prisoners of war ("POWs") during the Gulf War in 1991 and family members of those POWs, were awarded final judgment against defendants Republic of Iraq, Saddam Hussein, and the Iraqi Intelligence Service. The United States has filed a post-judgment motion to intervene in order to raise Iraq's newly-restored sovereign immunity as a challenge to the Court's subject matter jurisdiction and to move to vacate the final judgment in this case. Because the United States is not entitled to intervene as a matter of right or permissively, its motion to intervene will be denied.

### BACKGROUND

The factual background of this case is set forth fully in the Findings of Fact and Conclusions of Law entered July 7, 2003. *See Acree, et al. v. Republic of Iraq, et al.,* 271 F.Supp.2d 179, 2003 WL 21537919 (D.D.C. July 7, 2003). Briefly, the plaintiff POWs were brutally tortured by agents of Saddam Hussein's Iraqi government, causing severe and long-lasting mental and physical injury. The Iraqi agents refused to notify the International Committee of the Red Cross of the POWs' capture and condition, causing prolonged anguish and injury to the family members of the POWs.

Plaintiffs filed this lawsuit on April 4, 2002. After they obtained proper service of process on defendants and defendants failed to appear, the Clerk of Court entered default on September 25, 2003. On March 31, 2003, plaintiffs submitted evidence to support their cause of action against defendants and their claim for damages. The Court thoroughly and carefully reviewed plaintiffs' evidence and ascertained that Iraq, Saddam Hussein, and the Iraqi Intelligence Service were covered by the waiver of sovereign immunity contained in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7) (2000) ("FSIA"). On July 7, 2003, the Court entered final judgment in favor of plaintiffs against the Republic of Iraq, Saddam Hussein, and the Iraqi Intelligence Service, and awarded damages.

On July 18, 2003, plaintiffs filed a separate lawsuit in this Court seeking to satisfy their judgment from certain Iraqi bank accounts located in this country that the federal government had previously seized. *See Acree, et al. v. Federal Reserve Bank of New York and John Snow,* Civil Action No. 03–1549 (*"Acree v. Snow"*).[1] The Court granted a temporary restraining order ("TRO") in that case to preserve the status quo pending a consolidated hearing on the merits of the parties' motions for summary judgment and the plaintiffs' application for a preliminary injunction. Following a hearing in that case on July 29, 2003, the Court granted defendant's motion for summary judgment, holding that the Court could not require the United States to make available to plaintiffs any portion of the seized Iraqi funds.

On July 21, 2003, the Monday after plaintiffs obtained the TRO in *Acree v. Snow,* the United States filed its motion to

---

**1.** Plaintiffs later dismissed the Federal Reserve Bank of New York, leaving Treasury Secretary John Snow as the only remaining defendant.

intervene in this case. The United States claims that it seeks to intervene in order to ensure the successful establishment of a democratic government in Iraq. The United States also claims that it has an interest in protecting the seized Iraqi assets which were the subject of the Court's ruling in *Acree v. Snow* and in effectuating the intent of Congress and the President with respect to lawsuits against Iraq.

## DISCUSSION

### I. TIMELINESS

■■■ Intervention, both as a matter of right and permissive, requires that the application be timely. Fed.R.Civ.P. 24(a), (b). An untimely motion to intervene "must be denied." *NAACP v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). "Timeliness is measured from when the prospective intervenor knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C.Cir. 2003). Whether a motion to intervene is timely is to be evaluated based on all the circumstances present in the case, including "the time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke v. Norton,* 252 F.3d 468, 471 (D.C.Cir.2001) (quoting *United States v. AT & T,* 642 F.2d 1285, 1295 (D.C.Cir.1980)). Timeliness "is to be determined by the court in the exercise of its sound discretion[.]" *Associated Builders and Contractors, Inc. v. Herman,* 166 F.3d 1248, 1257 (D.C.Cir.

1999) (quoting *NAACP,* 413 U.S. at 366, 93 S.Ct. 2591). A post-judgment motion to intervene "will usually be denied where a clear opportunity for pre-judgment intervention was not taken." *Associated Builders,* 166 F.3d at 1257.

■■ On April 16, 2003, Congress authorized the President to "make inapplicable with respect to Iraq ... any other provision of law that applies to countries that have supported terrorism." Emergency Wartime Supplemental Appropriations Act, § 1503, Public Law 108–11, 117 Stat. 579 (April 16, 2003) (the "Act"). In this case, the United States claims that it did not need to intervene until the President exercised the authority granted to him by Congress in the Act and issued a Presidential Determination on May 7, 2003 making "inapplicable with respect to Iraq ... any other provision of law that applies to countries that have supported terrorism." Presidential Determination No.2003–23 of May 7, 2003 (the "Determination").

Accepting the government's argument that the timeliness of its motion to intervene should be evaluated from the May 7 Presidential Determination, it is uncontroverted that the United States was well aware on that date that this case was pending. It is also undisputed that the United States waited significantly more than two months after May 7 and almost two weeks after the Court entered final judgment before it moved to intervene.[2]

The 75–day delay in this case—13 days of which were post-judgment after the government had a two-month opportunity to file the motion pre-judgment—is a more

---

2. Indeed, the United States did not move to intervene in this case until after plaintiffs obtained a TRO in an attempt to satisfy their judgment from seized Iraqi assets. Although the timing of the United States' motion could

be viewed as retaliation against plaintiffs for obtaining the TRO, the Court does not find that the government's motion to intervene is retaliatory.

lengthy delay than existed in the cases involving pre-judgment motions relied upon by the United States. *See Roeder,* 333 F.3d at 233 (government moved to intervene before judgment and less than 30 days after receiving notice of unprotected right); *National Wildlife Federation v. Burford,* 878 F.2d 422, 434 (D.C.Cir.1989) (pre-judgment motion to intervene filed 73 days after applicant became aware of unprotected right was timely as to that claim), *rev'd on other grounds,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 735 (D.C.Cir.2003) (pre-judgment motion to intervene which was filed within two months and before answer filed was timely). The United States has not cited, and the Court is not aware of, any case in which this circuit has overruled a timeliness challenge to a post-judgment motion to intervene in which the applicant inexplicably failed to file its motion during the two months between the date it became aware of its asserted threatened interest and the entry of final judgment and which was filed 75 days after the applicant became aware of its asserted unprotected interest.

Moreover, the 75–day delay in this case is significantly greater than the 17–day delay in *NAACP v. New York.* In that case, the applicant claimed that it first learned on March 21, 1972 that its cognizable interests were not adequately protected. The applicant did not file its motion to intervene until April 7, 1972, and the Supreme Court held that the 17–day delay rendered the motion untimely. *NAACP,* 413 U.S. at 369, 93 S.Ct. 2591.

The United States offers no explanation for its 75–day delay in filing its motion to intervene. More importantly, the United States offers no explanation for its failure to seek intervention during the two months between the May 7 Presidential Determination and the entry of final judgment on July 7, 2003. Considering all of the circumstances in this case, the motion to intervene—filed 75 days after the May 7, 2003 Presidential Determination on which the United States bases its motion and almost two weeks after final judgment—was untimely.

Where, as here, a motion to intervene is untimely, "there is no need for the court to address the other factors that enter into an intervention analysis." *See Associated Builders,* 166 F.3d at 1257; *see also NAACP,* 413 U.S. at 369, 93 S.Ct. 2591 (the court's finding that the motion to intervene was untimely "makes it unnecessary for us to consider whether other conditions for intervention under Rule 24 were satisfied"). Nonetheless, for purposes of a full record, the remaining factors relevant to the merits of the government's motion to intervene will be addressed.

## II. INTERVENTION AS A MATTER OF RIGHT

Intervention as a matter of right should be granted when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a). Intervention under Rule 24(a) requires "(1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties" to protect that interest. *Smoke,* 252 F.3d at 470 (quoting *Williams & Humbert, Ltd. v. W & H Trade Marks, Ltd.,* 840 F.2d 72, 74 (D.C.Cir.1988)). A motion to intervene as a matter of right under Rule 24(a) can properly be denied if

the applicant fails to satisfy any one of these requirements. *Securities & Exchange Comm'n v. Prudential Securities, Inc.,* 136 F.3d 153, 156 (D.C.Cir.1998).

The United States identifies several interests as bases for intervention in this lawsuit. One interest is an interest in the seized Iraqi assets from which plaintiffs seek to satisfy their judgment. These Iraqi assets, however, are not the subject of this lawsuit. Additionally, the government's ability to protect the seized Iraqi assets from attachment by plaintiffs has not been impaired or impeded in any way. Indeed, the seized Iraqi assets in which the United States claims an interest were the subject of a separate civil action filed in this Court, *Acree v. Snow,* Civil Action 03–1549, in which the government was a represented party and which has been resolved in the government's favor.

■ Other interests claimed by the United States are interests in promoting a new, democratic Iraqi government and in ensuring that courts act only if there is subject matter jurisdiction.[3] Promoting democratic governance is clearly a worthy goal, but the government does not explain how the existence of an adjudication of liability against Iraq, Saddam Hussein and the Iraqi Intelligence Service for the torture of American POWs can interfere with that interest. There is nothing in the record to indicate that the existence of the judgment in this case may as a practical matter impair or impede the government's current efforts to promote a democratic

government in Iraq especially now that Saddam Hussein's regime has ended.[4]

The United States' claimed interest in ensuring that courts act only with proper subject matter jurisdiction is an interest the United States should have generally in every case. It is not an independent basis for intervention as of right under Rule 24(a). Moreover, the government's interest in having federal courts act only with proper subject matter jurisdiction will not be impaired or impeded in the absence of the government as a party because a court has an obligation to determine *sua sponte* whether it has such jurisdiction. *See Murphy Exploration & Production Co. v. Department of Interior,* 252 F.3d 473, 479–80 (D.C.Cir.2001).

■ The Court's subject matter jurisdiction in this case was based on 28 U.S.C. § 1330, which provides for original jurisdiction over civil cases against a foreign state in which the foreign state is not entitled to immunity. It is undisputed that at the time this lawsuit was filed, the sovereign immunity of Iraq, Saddam Hussein, and the Iraqi Intelligence Service had been waived under the FSIA and the Court had subject matter jurisdiction. Seeking to assert Iraq's now-restored sovereign immunity would be for naught. "[S]overeign immunity, once waived, cannot be reasserted." *Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.,* 179 F.3d 1279, 1287 n. 18 (11th Cir.1999); *see also Rodriguez v. Transnave, Inc.,* 810 F.Supp. 194, 196 (S.D.Tex.), *rev'd on other grounds,* 8 F.3d 284 (5th Cir.1993); *Ipi-*

---

**3.** However, the government has made no similar effort to intervene in *Hill v. Republic of Iraq,* Civil Action No. 99–3346(TPJ) (D.D.C.), in order to promote a democratic Iraqi government and to argue that the court lacks subject matter jurisdiction in that pending case brought by American civilians held hostage and used by Iraq as "human shields" during the 1991 Gulf War.

**4.** Arguably, the contrast between the behavior of the autocratic regime under Saddam Hussein which resulted in the adjudication of liability in this case and that of a democratic government which does not engage in torture could benefit the United States' efforts to promote the new government in Iraq.

*trade International, S.A. v. Federal Republic of Nigeria,* 465 F.Supp. 824, 826 (D.D.C.1978).[5] As a result, § 1503 of the Act and the Presidential Determination could not operate for purposes of this lawsuit to restore Iraq's sovereign immunity which had previously been waived. This conclusion comports with the rule that "absent a clear statement to the contrary, legislation should not . . . be interpreted to oust a federal court's . . . jurisdiction over a present case." *Daingerfield Island Protective Society v. Lujan,* 920 F.2d 32, 36 (D.C.Cir.1990), *cert. denied,* 502 U.S. 809, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

■ Even if the Presidential Determination operated to restore Iraq's previously-waived sovereign immunity in this case, the defense of sovereign immunity could be asserted only by Iraq, not by the United States. *See Aquamar,* 179 F.3d at 1290 ("[p]arties other than a foreign sovereign ordinarily lack standing to raise the defense of sovereign immunity" but the court may address the issue independently); *Wilmington Trust v. United States District Court,* 934 F.2d 1026, 1032–33 (9th Cir.1991) (noting that prior to the enactment of the FSIA, the State Department would make the suggestion of sovereign immunity for a foreign state but that "Congress intended requests for protection under FSIA to originate from the foreign state party"), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). The United States has stated unequivocally that it "is not acting on behalf of Iraq[.]" *See* Motion to Intervene, at 1.

Additionally, even if § 1503 of the Act and the Presidential Determination could reassert sovereign immunity in this lawsuit, the Act and the Presidential Determination mention only Iraq. Neither the Act

authorizing the Presidential Determination nor the Presidential Determination itself mentions Saddam Hussein or the Iraqi Intelligence Service either by name or by description and, therefore, neither purports to restore sovereign immunity for those two defendants. If Congress and the President want to absolve Saddam Hussein and the Iraqi Intelligence Service of liability for having tortured the POW plaintiffs, they must do so specifically. On issues of sovereign immunity, the Court is "bound to infer that [Congress] intended no more than it said." *See Brown v. Secretary of the Army,* 78 F.3d 645, 650 (D.C.Cir.), *cert. denied,* 519 U.S. 1040, 117 S.Ct. 607, 136 L.Ed.2d 533 (1996). As a result, even if Iraq's sovereign immunity could be restored in this case and even if the United States could raise the defense of sovereign immunity on behalf of Iraq, the Court would still have had subject matter jurisdiction on July 7, 2003 to enter final judgment against Saddam Hussein and the Iraqi Intelligence Service.

## III. PERMISSIVE INTERVENTION

An applicant may be permitted to intervene under Rule 24(b) when its "claim or defense and the main action have a question of law or fact in common." Fed. R.Civ.P. 24(b). When considering an application for permissive intervention, the Court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* "As its name would suggest, permissive intervention is an inherently discretionary enterprise." *Equal Employment Opportunity Comm'n v. National Children's Center, Inc.,* 146 F.3d 1042, 1046 (D.C.Cir.1998).

**5.** Although the cited cases involved § 1605(a)(1) of the FSIA, the reasoning can be applied to § 1605(a)(7).

The United States argues that its challenge to the Court's subject matter jurisdiction based on the defense of Iraq's restored sovereign immunity is a question of law that it has in common with the main action. Iraq's sovereign immunity, however, is not "the applicant's claim or defense." Instead, as is noted above, it is a defense that can be asserted only by Iraq.

Because the Court can address its subject matter jurisdiction *sua sponte* and has done so in this Memorandum Opinion, allowing the United States to intervene in this closed case to challenge the Court's jurisdiction would cause undue delay and prejudice to the existing parties by prolonging litigation that is now over.

### CONCLUSION AND ORDER

Because the United States' motion to intervene is untimely, because the United States does not claim an interest which may be threatened by the judgment in this case, and because the United States' claimed interests are adequately protected, the United States is not entitled to intervene as a matter of right in this case. Because post-judgment intervention by the United States for the purpose of filing a meritless motion to vacate the judgment for lack of jurisdiction would cause unreasonable delay in the final resolution of this lawsuit and would cause prejudice to the plaintiffs who are entitled to finality in their judgment, permissive intervention will not be granted. Accordingly, it is hereby

ORDERED that the United States' Motion to Intervene [38] be, and hereby is, **DENIED.**