166 F.3d 1248
 160 L.R.R.M. (BNA) 2452, 334 U.S.App.D.C. 285
 ASSOCIATED BUILDERS AND CONTRACTORS, INC., et al.,
Appellants/Cross-Appellees,
v.
Alexis M. HERMAN, Secretary of Labor, and Anthony Swoope,
Director, Bureau of Apprenticeship and Training,
U.S. Department of Labor,
Appellees/Cross-Appellants.
 Nos. 97-5300, 97-5327 and 97-5362.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 12, 1999.
Decided Feb. 16, 1999.
 
 William W. Osborne, Jr., argued the cause for appellant Road Sprinkler Fitters Local Union 669, U.A., AFL-CIO. With him on the briefs was Marc D. Keffer.
 Paul S. Padda, Assistant U.S. Attorney, argued the cause for appellees/cross-appellants U.S. Department of Labor. With him on the briefs were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney. Gregory W. Addington, Assistant U.S. Attorney, entered an appearance.
 William W. Osborne, Jr., Marc D. Keffer and Terry R. Yellig were on the joint brief for amici curiae Building and Construction Trades Department, AFL-CIO, and Road Sprinkler Fitters Local Union 669, U.A., AFL-CIO.
 Before: EDWARDS, Chief Judge, SILBERMAN and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Chief Judge:
 
 
 1
 Grinnell Fire Protection Systems Co. ("Grinnell") has for some time now been engaged in a labor dispute with employees represented by the Road Sprinkler Fitters Local Union No. 699 ("Union"). The Union has filed unfair labor practice charges with the National Labor Relations Board ("NLRB") claiming that Grinnell unlawfully instituted changes in the terms and conditions of employment (including modifying a joint apprenticeship training program) without first bargaining in good faith to impasse. Because its unionized employees are currently on strike, Grinnell sought permission from the Department of Labor's ("DOL") Bureau of Apprenticeship and Training ("BAT") to train striker replacements under some form of BAT-approved apprenticeship program--either a new program to be administered by Grinnell, or an existing, lawfully registered program administered by another employer. In response to Grinnell's request, BAT deferred judgment on whether to allow Grinnell to implement a new apprenticeship program and it refused to allow other employers to train Grinnell employees under their apprenticeship programs, pending a decision by the NLRB on the yet unresolved unfair labor practice charges. Grinnell sought relief in the District Court, alleging that BAT's decisions were arbitrary, capricious, and contrary to law.
 
 
 2
 On cross-motions for summary judgment, the District Court held that it was reasonable for BAT to defer judgment on Grinnell's proposal for a new program, but that it was arbitrary and capricious for BAT to preclude Grinnell employees from enrolling in already approved programs. Subsequently, the Union moved to intervene and this motion was denied by the District Court. Both Grinnell and DOL have appealed the District Court's judgment to this court. In a consolidated case, the Union appeals the District Court's denial of its motion to intervene.
 
 
 3
 We affirm the judgment of the District Court only insofar as it ordered BAT to permit Grinnell employees to enroll in ongoing and lawfully registered apprenticeship programs of other employers. BAT acted without any statutory or regulatory authority in blocking the enrollment of Grinnell employees in these programs. We reverse the District Court, however, insofar as it endorsed BAT's decision to defer consideration of Grinnell's request to register a new apprenticeship program for striker replacements. BAT's decision inexplicably ignored the plain language in the governing regulations that dispenses with any need to defer to the NLRB. Accordingly, we vacate that portion of BAT's decision and remand to the District Court with instructions to remand the case to the agency for prompt disposition of Grinnell's request for registration of a new apprenticeship program. Finally, because the Union has offered no justification for its failure to intervene prior to judgment in the District Court, we affirm the District Court's denial of its motion to intervene.
 
 I. Background
 A. Regulatory Background
 
 4
 In accordance with the National Apprenticeship Act ("NAA"), 29 U.S.C. §§ 50-50b, DOL has promulgated and implemented regulations related to the administration of the nation's apprenticeship programs, which offer training to apprentices in certain skilled trades. See 29 C.F.R. pt. 29 (1998). These programs are registered and monitored either through BAT or through a BAT-approved State Apprenticeship Agency or Council ("SAC"). See id. §§ 29.2(o), 29.12. Under DOL regulations implemented pursuant to the Davis-Bacon Act, 40 U.S.C. §§ 276a-276a-5, an employer may pay apprentices wages below the prevailing wage rate "when [the apprentices] are employed pursuant to and individually registered in a bona fide apprenticeship program registered with [BAT], or with a [SAC] recognized by [BAT]." 29 C.F.R. § 5.5(a)(4) (1998).
 
 
 5
 In order to register an apprenticeship program with BAT or a SAC, a "sponsor," i.e., a person or entity operating an apprenticeship training program, see id. § 29.2(g), must designate an "apprenticeship committee" to administer the program. See id. § 29.2(i). The committee may be "joint"--in which case it is comprised of an equal number of company and employee representatives--or it may be "unilateral"--in which case employee representatives do not participate in its operation. See id. When a sponsor seeks to register an apprenticeship program, it must meet certain eligibility requirements. See id. § 29.3. Once approved, the program must conform to certain regulatory standards. See id. § 29.5.
 
 B. Factual Background
 
 6
 Prior to April 1994, Grinnell and the Union had agreed to, and participated in, a collectively bargained joint apprenticeship program. See Agreement Between National Fire Sprinkler Ass'n, Inc. and Road Sprinkler Fitters Local Union No. 699 ("agreement") at 33, reprinted in Appendix to Brief of Local 699 ("Union App.") 85. The program was administered by a Joint Apprenticeship and Training Committee ("JATC"), which was comprised of an equal number of Grinnell officials and Union agents. See id. at 34, reprinted in Union App. 86.
 
 
 7
 In April 1994, the Union organized a strike against Grinnell. Grinnell subsequently hired replacement workers. Following contract negotiations, the Union rejected Grinnell's purported "final" contract offer. Grinnell then informed the Union that the terms of its final offer would be implemented on April 14, 1994. The Union responded by filing unfair labor practice charges against Grinnell, alleging that, in violation of the National Labor Relations Act ("NLRA"), the company had unilaterally instituted changes in the terms and conditions of employment without first bargaining in good faith to impasse. See 29 U.S.C. § 158(a)(5) (1994); NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). After a hearing, an Administrative Law Judge ("ALJ") agreed with the Union that Grinnell had violated the NLRA by "implementing the terms of its last contract offer in the absence of a lawful impasse." Grinnell Fire Protection Sys. Co., 5-CA-24521, 5-CA-25227,5-CA-25406, at 32 (Jan. 16, 1997), reprinted in Appendix ("Grinnell App.") 159. The ALJ proposed that Grinnell be "ordered to restore the terms and conditions of employment of unit employees as they existed prior to April 14, 1994, [and to] continue them in effect until the parties reach an agreement or a good-faith impasse." Id. Grinnell appealed the ALJ's ruling to the full NLRB. The NLRB has yet to render a judgment in the case.
 
 
 8
 As the proceeding before the NLRB has progressed, Grinnell has continued to hire striker replacements and it has sought to train these workers through some form of BAT- or SAC-approved apprenticeship program. Grinnell first tried to use the program that was jointly administered by the JATC. John Walsh, the Director of the JATC--and one of the Union's agents on the committee--responded to the company's request by refusing to approve new individuals into the joint program until Grinnell resumed paying hourly contributions required by the agreement. See Letter from John J. Walsh, Director, Local 699 JATC, to Grinnell Fire Protection (June 6, 1994), reprinted in Union App. 49. Grinnell's President, Jerry Boggess, responded by asserting that Grinnell was, in fact, continuing to make the hourly contributions to the JATC. See Letter from Jerry R. Boggess to Walsh (July 15, 1994), reprinted in Union App. 50-51. The final correspondence in this brief exchange was a letter from Walsh to Boggess, essentially asking for documentation of Grinnell's contributions to the JATC. See Letter from Walsh to Boggess (July 25, 1994), reprinted in Union App. 52. The JATC has yet to approve the enrollment of any of Grinnell's striker replacements. It is also undisputed that neither Grinnell nor the Union is currently participating in the apprenticeship program administered by the JATC.
 
 
 9
 In June 1995, counsel for Grinnell asked an official at DOL how the ongoing strike would affect Grinnell's ability to enroll its employees either in a new, unilateral apprenticeship program, or in an already approved program that is currently being administered by another employer. See Letter from Donald L. Rosenthal, Counsel for Grinnell, to Charles D. Raymond, Associate Solicitor of Labor (June 2, 1995), reprinted in Grinnell App. 22-24. Anthony Swoope, Director of BAT, responded by stating that BAT would not approve the registration of a new program, nor would it allow Grinnell's replacement workers to enroll in existing programs. See Letter from Swoope to Rosenthal (July 12, 1995), reprinted in Grinnell App. 26-27; see also Letter from Claire Louder, Executive Director, Associated Builders & Contractors, Inc., South Texas Chapter, to Dwight Green, Grinnell Fire Protections Systems (Aug. 31, 1995), reprinted in Grinnell App. 29 (administrator of already approved program explaining to Grinnell executive that the local branch of BAT "has refused to register any apprentices employed by [Grinnell] in ABC-South Texas Chapter's registered apprenticeship program"). Swoope's letter--which the parties treated as a policy statement--relied heavily upon an interpretation of BAT Circular 95-06. The District Court, however, subsequently vacated the policy statement and the circular upon which it was based, because the circular had not been drafted pursuant to notice and comment rule making. See Associated Builders & Contractors, Inc. v. Reich, 922 F.Supp. 676, 681-82 (D.D.C.1996) ("ABC I"). The parties have not contested this action.
 
 
 10
 Grinnell again petitioned BAT to register a new, unilateral program to train striker replacements. BAT again refused to approve registration of a new program, this time citing only the Union's objection to the proposed program and the pending NLRB complaint. See Letter from Isadore H. Gross, Jr., Regional Director, BAT, to Kenneth L. Bitner, Grinnell District General Manager (Aug. 30, 1995), reprinted in Grinnell App. 28. It is undisputed that BAT also actively blocked the enrollment of Grinnell's striker replacements in established, lawfully registered programs. It did so by directing other employers not to train Grinnell employees under their approved programs. See, e.g., Affidavit of Michael J. Friedman, Grinnell Consultant, at 8 (Jan. 9., 1996), reprinted in Grinnell App. 39 (stating that "all efforts ... to register Grinnell employees as apprentices in existing third party programs[ ] have been denied by Defendant BAT"). As a result of BAT's refusal to allow other employers to train Grinnell employees under their approved programs, Grinnell was forced to formally request permission from BAT for its replacement workers to enroll in the existing programs.
 
 
 11
 BAT rejected this request in the ad hoc decision under review in this case, asserting that Grinnell must defer registering a new program and decline from enrolling employees in existing programs, until the NLRB renders a judgment as to whether Grinnell bargained to impasse before implementing the terms of its final contract offer. The ad hoc decision was issued through a series of virtually identical letters from BAT to various Grinnell executives and other employers who sought to train Grinnell employees. See, e.g., Letter from Gross to Bitner (May 30, 1996) ("Ad Hoc Decision"), reprinted in Grinnell App. 82I-82K (amended June 10, 1996). In the ad hoc decision, BAT acknowledged that it was not relying upon any BAT circulars, and that "the applicable statute, regulations, and policies do not specifically address" Grinnell's requests. Ad Hoc Decision at 1, reprinted in Grinnell App. 82I. Nevertheless, BAT purported to justify its decision to "defer" by reference to 29 C.F.R. § 29.3(h).
 
 
 12
 Section 29.3(h), in its entirety, reads as follows:
 
 
 13
 Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgment of union agreement or no objection to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application [sic] for registration and of the apprenticeship program. The registration agency shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt of union comments, if any, before final action on the application for registration and/or approval.
 
 
 14
 BAT held that the outcome of the case currently pending before the NLRB will be determinative of BAT's decision whether to grant Grinnell's requests. According to BAT, where a collective bargaining agreement provides for union participation in the operation of an apprenticeship program, § 29.3(h) requires the consent of the union before an employer may register an apprenticeship program. Whether the agreement between Grinnell and the Union is still in effect is a matter that must be determined by the NLRB. If the NLRB affirms the ruling of the ALJ, the terms of the agreement will continue to be in effect, and BAT cannot register a new program without the Union's consent. But if the NLRB holds that Grinnell indeed bargained to impasse, the terms of the last offer would be operative and a unilateral program would be permissible. "[B]ecause ... BAT was unable to act upon [Grinnell's requests] without effectively determining the merits of the unfair labor practice charge," it deferred approval of any of Grinnell's requests. Brief for Appellees/Cross-Appellants at 9.
 
 
 15
 As for Grinnell's request to enroll its employees in existing programs, BAT acknowledged that "[s] 29.3(h) is only applicable to the situation where an employer seeks to register a new apprenticeship program." Ad Hoc Decision at 2, reprinted in Grinnell App. 82J. This notwithstanding, BAT held that the "intent" of § 29.3(h)--which, according to BAT, is "to protect the union's right to participate in the existing joint apprenticeship programs"--applies "with equal force" to an employer's request to register its employees in existing programs. Id. Accordingly, BAT refused to allow Grinnell employees to enroll in these programs until the NLRB determined whether the agreement was still in effect.
 
 
 16
 In November 1996, Grinnell filed the instant lawsuit in District Court, alleging that BAT's ad hoc decision was arbitrary, capricious, and contrary to law. On September 19, 1997, upon consideration of cross-motions for summary judgment, the District Court held that it was reasonable and lawful for BAT to defer consideration of Grinnell's request to register a new, unilateral program. See Associated Builders & Contractors, Inc. v. Reich, 978 F.Supp. 338, 341-42 (D.D.C.1997) ("ABC II"). However, the court held that to the extent that the ad hoc decision prevented Grinnell's employees from entering existing programs, it went "much too far." Id. at 342. The court asserted that this part of the ad hoc decision violated the intent and purpose of the NAA--which is, according to the court, "to further the interest of apprentices and this Nation by ensuring that men and women entering a particular labor market receive appropriate and needed apprenticeship training"--and it "certainly gives the appearance that [BAT is] taking sides in the labor dispute." Id. Accordingly, it vacated that portion of BAT's decision and ordered BAT to "permit Grinnell employees to participate in existing external approved apprenticeship programs." Id.
 
 
 17
 On October 3, 1997, the Union filed a motion to intervene in the District Court, which was opposed by Grinnell. Before the District Court had ruled on the Union's motion, both Grinnell and DOL filed appeals to this court. Subsequently, on December 19, 1997, the District Court denied the Union's motion to intervene. See Associated Builders & Contractors, Inc. v. Reich, No. 96-2625 (D.D.C. Dec. 19, 1997) (order), reprinted in Union App. 26-27. The court held that it could no longer exercise jurisdiction over the case, because the parties had already appealed to this court. See id. On December 29, 1997, the Union moved in this court to intervene on appeal. In March 1998, a motions panel of this court denied the Union's motion to intervene on appeal, allowed the Union to participate as amicus curiae, and consolidated the Union's appeal of the District Court's denial of the motion to intervene with Grinnell's and DOL's appeals of the District Court's decision on the merits in ABC II.
 
 
 18
 On appeal, Grinnell challenges the District Court's determination that the ad hoc decision was reasonable with respect to its request to register the unilateral program, but urges affirmance of the District Court's determination that DOL's application of the ad hoc decision to existing programs went "too far." DOL challenges the latter ruling, but urges affirmance of the former. The Union has filed an amicus brief in support of DOL's position, and also challenges the District Court's denial of its motion to intervene.
 
 II. Analysis
 A. Standard of Review
 
 19
 In a case like the instant one, in which the District Court reviewed an agency action under the Administrative Procedure Act ("APA"), we review the administrative action directly. See Troy Corp. v. Browner, 120 F.3d 277, 281 (D.C.Cir.1997); Gas Appliance Mfrs. v. Department of Energy, 998 F.2d 1041, 1045 (D.C.Cir.1993). In other words, we accord no particular deference to the judgment of the District Court. See Gas Appliance Mfrs., 998 F.2d at 1045. Rather, on an independent review of the record, we will uphold BAT's ad hoc decision unless we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994). In determining whether the action is "in accordance with law," we must "give an agency's interpretation of its own regulation 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " Military Toxics Project v. EPA, 146 F.3d 948, 954 (D.C.Cir.1998) (quoting Stinson v. United States, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)).
 
 
 20
 B. BAT's Refusal to Allow Grinnell Employees to Enroll in Existing Programs
 
 
 21
 BAT has conceded throughout this litigation that it has directed other employers with already approved apprenticeship programs not to enroll Grinnell employees in those programs. See, e.g., ABC II, 978 F.Supp. at 342. We agree with the District Court that BAT had no statutory or regulatory authority to block Grinnell employees from participating in existing apprenticeship programs at other companies.
 
 
 22
 The ad hoc decision itself cites only § 29.3(h) for authority, but acknowledges, as it must, that "[s] 29.3(h) is only applicable to the situation where an employer seeks to register a new apprenticeship program with BAT." Ad Hoc Decision at 2, reprinted in Grinnell App. 82J. Section 29.3 is entitled, "Eligibility and procedure for Bureau registration of a program." 29 C.F.R. § 29.3 (emphasis added). Nothing in § 29.3--indeed, nothing in Part 29 of the applicable regulations--grants BAT the authority to block one company's employees from enrolling in already registered apprenticeship programs of another company. Thus, to the extent that BAT was relying upon its interpretation of § 29.3(h) for its authority to block such enrollments, that interpretation was plainly erroneous.
 
 
 23
 DOL's brief to this court cited no authority--other than § 29.3(h)--in support of BAT's position, and counsel gave no basis for the authority when questioned at oral argument. The only justification even mentioned at oral argument--that BAT might have been motivated by a desire to give the Union an advantage in the ongoing labor dispute--is certainly not a valid one, as counsel for DOL had to concede. See Chamber of Commerce v. Reich, 74 F.3d 1322, 1337-38 (D.C.Cir.1996).
 
 
 24
 Therefore, we affirm the District Court's grant of summary judgment in favor of Grinnell on this point, although we do so for slightly different reasons than those articulated by the District Court. The District Court held that BAT's refusal to allow Grinnell employees to enroll in existing programs violated the NAA because it "effectively punish[es] innocent workers." ABC II, 978 F.Supp. at 342. However, we see no need to interpret the NAA here. Instead, we affirm the District Court's decision and order on this point because BAT simply had no lawful authority to do what it did. See University of the Dist. of Columbia Faculty Ass'n/NEA v. District of Columbia Fin. Responsibility and Management Auth., 163 F.3d 616, 621 (D.C.Cir.1998); Railway Labor Executives' Ass'n v. National Mediation Bd., 29 F.3d 655, 659 (D.C.Cir.1994) (en banc).
 
 
 25
 C. BAT's Deferral of Grinnell's Request to Register a New, Unilateral Program
 
 
 26
 Grinnell's request to register a new, unilateral apprenticeship program, separate and distinct from the program previously established pursuant to the collective bargaining agreement, does implicate § 29.3(h), because Grinnell is seeking to register a program with BAT. BAT deferred ruling on Grinnell's request, on the assumption that there is an issue under § 29.3(h), namely, whether the Union's consent was required before BAT could approve the request. If the Union's consent was not required, BAT agreed that Grinnell's request for registration should be approved. See Brief for Appellees/Cross-Appellants at 20. However, BAT's interpretation of § 29.3(h) apparently led it to believe that it could not determine whether the Union's consent was required until after the NLRB decided whether the parties' agreement was still in effect. Therefore, BAT chose to stay its hand, pending the outcome of the case before the NLRB.
 
 
 27
 Grinnell, however, contends that it must be permitted to train striker replacements under apprenticeship programs, and that § 29.3(h) should not be read to provide the Union with veto power over any attempt on Grinnell's part to offer apprenticeship training. In support of its position, Grinnell raises an issue that BAT, in the decisions at issue here, and DOL, in its arguments to the District Court and this court, mostly ignore.
 
 
 28
 As Grinnell points out, § 29.3(h) requires a union's consent to registration of a new program only where the "collective bargaining agreement or other instrument, provides for participation by [the] union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised." (emphasis added). Grinnell argues that since the Union is not currently participating in the operation of the JATC (because it is on strike), its consent is not required before BAT may approve Grinnell's unilateral program--regardless of whether the agreement is still in effect. Grinnell claims that § 29.3(h) was drafted to account for precisely this situation; it points out that the provision goes on to state that "[w]here no such participation is evidenced and practiced,"--i.e., for example, when the union is on strike--the union's consent is not required. Such an interpretation comports with common sense, according to Grinnell, because a contrary reading of the section would mean that "a union is able to block an employer's effort to obtain certified training for replacement apprentices during a strike, even as the Union refuses to participate in a joint program." Brief of Appellants at 27-28.
 
 
 29
 BAT never addressed the meaning of the phrases "and such participation is exercised" and "where no such participation is evidenced and practiced" in its ad hoc decision, and DOL inexplicably failed to respond to Grinnell's interpretation in its brief to this court. What little is offered by the agency is blatantly disingenuous. Throughout this litigation, BAT and counsel for DOL have consistently misrepresented the language of § 29.3(h). In Swoope's affidavit submitted to the District Court, he summarized § 29.3(h) as requiring union consent where the collective bargaining agreement provides for union participation in the apprenticeship program, "and that participation has been exercised." Declaration of Anthony Swoope, Director, BAT, at 3 (Dec. 18, 1996), reprinted in Grinnell App. 123 (emphasis added). In other words, Swoope substituted "has been exercised" for "is exercised." BAT made precisely the same misrepresentation in its ad hoc decision. See Ad Hoc Decision at 2, reprinted in Grinnell App. 82J. To complete the circle, counsel for DOL also used the "has been exercised" language in its brief to this court. See Brief for Appellees/Cross-Appellants at 17. These misstatements hardly can be viewed as simple oversights.
 
 
 30
 Obviously, "is exercised" does not mean the same thing as "has been exercised." There is no doubt that the Union's participation in the JATC program "has been exercised." If that were the language of § 29.3(h), it would clearly support BAT's position, because the Union and Grinnell both actively participated in the JATC program prior to the commencement of the strike in April 1994. But that is not the language of the regulation. We do not see how BAT can require the Union's consent to the establishment of a new apprenticeship program under § 29.3(h) in the face of the "and such participation is exercised" and "where no such participation is evidenced and practiced" language in the regulation. BAT may have an answer, but it has failed to provide it.
 
 
 31
 Because the agreement has expired, the JATC program may or may not exist, depending upon whether Grinnell had bargained in good faith to impasse before implementing the terms of its final offer. There is no question, however, that the Union is not currently participating in the JATC program. The Union represented at oral argument that it will certainly participate in the JATC program if the NLRB finds that Grinnell did not bargain in good faith to impasse, in which case the agreement is still in effect. Section 29.3(h), however, requires that the Union participation "is exercised," not that it might be exercised pending the outcome of a case before the NLRB, nor, as BAT and DOL would have it, that it has been exercised at some point in the past. Section 29.3(h) is quite clear that "[w]here no such participation is evidenced and practiced," union consent is not required.
 
 
 32
 It is true that this court must defer to a "reasonable" agency interpretation of its own regulation, even if that interpretation is not "the one that the court would have adopted in the first instance." Belco Petroleum Corp. v. FERC, 589 F.2d 680, 685 (D.C.Cir.1978). However, BAT's path from "is exercised" to "has been exercised" has yet to be explained and is, at best, incomprehensible. Accordingly, we vacate this portion of BAT's ad hoc decision with instructions to the District Court to remand to the agency for prompt disposition of Grinnell's request for registration of a new, unilateral program. If the agency cannot articulate a legitimate basis for denying registration--and BAT's desire to give one side an advantage in an ongoing labor dispute is not a legitimate basis--Grinnell's request should be granted. There is no reason to defer a decision until the NLRB has ruled. Even assuming that the agreement is still in effect, there is no doubt that under § 29.3(h), it "provides for participation by [the] union ... in the operation of the substantive matters of the apprenticeship program." The only issue is whether that participation "is exercised." Nothing that the NLRB decides will be dispositive with respect to that issue. Moreover, insofar as the NLRA is concerned--that is, insofar as Grinnell has committed an unfair labor practice--the NLRB will provide the appropriate remedy if one is warranted.
 
 
 33
 D. The Denial of the Union's Motion to Intervene
 
 
 34
 The Union did not move to intervene in the District Court until October 3, 1997, several weeks after the District Court issued its decision in ABC II. The District Court ruled that it was constrained to deny the Union's motion for want of jurisdiction, because both Grinnell and DOL had already appealed to this court. We decline to decide whether the District Court had jurisdiction to grant the Union's motion. Compare Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 298, 299 (5th Cir.1984) (holding that district court was without jurisdiction to grant motion to intervene once appeal had been filed), with Halderman v. Pennhurst State Sch. & Hosp., 612 F.2d 131, 134 (3d Cir.1979) (en banc) (holding that filing of appeal did not divest district court of jurisdiction to grant motion to intervene). Instead, we affirm the denial of the Union's motion on the ground that the motion was untimely.
 
 
 35
 Rule 24 of the Federal Rules of Civil Procedure states that any motion for intervention must be "timely." FED R. CIV. P. 24(a). The Supreme Court has said that "[t]imeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) (footnote omitted). If the motion was not timely, there is no need for the court to address the other factors that enter into an intervention analysis. See id. at 369, 93 S.Ct. 2591. Where, as here, the District Court has not made any factual findings with respect to the timeliness issue (because it denied the motion on jurisdictional grounds), we "must make our own determination." Cook v. Boorstin, 763 F.2d 1462, 1468 (D.C.Cir.1985).
 
 
 36
 A motion for "intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken." Dimond v. District of Columbia, 792 F.2d 179, 193 (D.C.Cir.1986); see also Massachusetts Sch. of Law v. United States, 118 F.3d 776, 783 n. 5. (D.C.Cir.1997) ("[S]ome would-be intervenors may inexcusably neglect to try to enter the proceedings before judgment, at a time when notice of their arguments would have enabled the district court to avert the alleged errors. Then, post-judgment intervention for the purpose of challenging those supposed defects on appeal would rightly be denied as untimely."). Here, the Union offers no reason whatsoever for its failure to intervene prior to judgment.
 
 
 37
 The Union cites two cases that reversed denials of motions to intervene, United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), and Dimond. In those cases, however, the necessity of intervention did not arise until after judgment had been entered. In United Airlines, the would-be intervenor found out only after final judgment that the plaintiffs did not plan to appeal the denial of class certification. See United Airlines, 432 U.S. at 393-94, 97 S.Ct. 2464. In Dimond, "the potential inadequacy of [the existing parties'] representation came into existence only at the appellate stage." Dimond, 792 F.2d at 193. In this case, the Union sought to intervene simply because it wished to advance a particular argument on appeal that DOL had not explicitly advanced in the District Court. The Union has offered no reason, and no reason is apparent from the record, why it could not have sought intervention prior to judgment. Accordingly, given the presumption that post-judgment motions to intervene will be denied, we affirm the District Court's denial of the Union's motion. If the Union wishes to intervene in further proceedings, i.e., on remand, it may raise the issue at the appropriate time.
 
 III. Conclusion
 
 38
 For the reasons stated above, we affirm in part and reverse in part the judgment of the District Court, and remand for further proceedings consistent with this opinion.
 
 
 39
 So ordered.