**ROAD SPRINKLER FITTERS LOCAL UNION 669, Appellant,**

v.

**Alexis M. HERMAN, Secretary of Labor, et al., Appellees.**

No. 00–5023.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 13, 2000.

Decided Dec. 22, 2000.

William W. Osborne, Jr. argued the cause and filed the briefs for appellant. Francis R. Sheed entered an appearance.

Maurice Baskin argued the cause and filed the brief for appellee Grinnell Fire Protection Systems Corporation.

Edward D. Sieger, Attorney, U.S. Department of Labor, argued the cause for the federal appellees. Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence, Stacy M. Ludwig and Heather Jean Kelly, Assistant U.S. Attorneys, were on the brief.

Before: WILLIAMS, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A striking union challenges the Department of Labor's certification of an apprenticeship program to train replacement workers, arguing that the Department's action conflicts with the National Labor Relations Act, that the agency improperly acted in an NLRA-preempted area, and that the decision rests on an unreasonable reading of Department regulations. Finding neither conflict with nor encroachment upon the NLRA, and deferring to the Department's interpretation of its own regulations, we affirm the district court's award of summary judgment for the government.

I

The largest union of installers of fire protection sprinkler systems, appellant Road Sprinkler jointly operated a collectively bargained apprenticeship training program with an employer organization. Because the program had been certified by the Department of Labor's Bureau of Apprenticeship and Training ("BAT"), participating employers could pay apprentices sub-minimum wages. *See* 29 C.F.R. § 5.5(a)(4).

In September 1993, one of the employer organization members, appellee Grinnell Fire Protection Systems, began negotiating with Road Sprinkler for a new collective bargaining agreement, seeking, among other things, a new apprenticeship pro-gram. Seven months later, after declaring a bargaining impasse, Grinnell unilaterally imposed the terms and conditions of its "final offer," which did not include participation in the joint program.

Claiming that impasse had not been reached and that Grinnell's imposition of its last offer amounted to an unfair labor practice, Road Sprinkler filed a complaint with the NLRB and called a national strike. Grinnell responded by hiring striker replacements. The company also asked the BAT to either certify a new apprenticeship program to train replacement workers or allow their enrollment in programs run by other employers.

Instead of acting on Grinnell's request, the BAT advised the parties that it would make no decision until after the NLRB resolved Road Sprinkler's ULP charges. In support, the BAT pointed to the "union consent" provision of its own regulations:

Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgment of union agreement or *"no objection"* to the registration is required.

29 C.F.R. § 29.3(h). According to the BAT, the Board's resolution of the pending ULP proceedings would determine whether Road Sprinkler had a continuing role in the joint apprenticeship program sufficient to trigger section 29.3(h)'s requirement for union consent. This court ruled the BAT delay improper, finding that regardless of what the NLRB might decide, the still-striking union was not participating in the apprenticeship program for purposes of section 29.3(h). *Associated Builders and Contractors, Inc. v. Herman*, 166 F.3d 1248, 1256 (D.C.Cir.1999). Finding also that the BAT lacked authority to block replacement workers from participating in programs run by other employers, we re-

manded for immediate consideration of Grinnell's certification request. *Id.* at 1254–55.

Shortly thereafter, the NLRB completed its consideration of Road Sprinkler's ULP charges. Ruling for the union, the Board directed the company to "restore to unit employees the terms and conditions of employment that were applicable prior" to the unfair labor practice. *See Grinnell Fire Protect. Sys. Co.,* 328 N.L.R.B. No. 76, 1999 WL 357628, at *5 (May 28, 1999). At this writing, Grinnell's petition for review remains pending in the Fourth Circuit. *Grinnell Fire Protect. Sys., Inc. v. NLRB,* 236 F.3d 187 (4th Cir.2000).

In the meantime, the BAT, proceeding on remand from our earlier decision, changed its position. Despite its previous suggestion that an NLRB order reinstating the joint apprenticeship program would trigger section 29.3(h)'s union consent requirement, the BAT granted Grinnell's certification request over Road Sprinkler's objection. In doing so, the BAT relied on a different part of section 29.3—subsection (i). That subsection provides for unilateral employer apprenticeship programs "[w]here the employees to be trained have no collective bargaining agent." To support its conclusion that Road Sprinkler did not represent Grinnell's striker replacements for the purposes of subsection (i), the BAT cited a new NLRB decision, *Detroit Newspaper,* extending the rule that employers need not bargain with striking unions over terms and conditions of employment for replacement workers to unfair labor practice strikes. *Detroit Newspaper Agency,* 327 N.L.R.B. No. 164, 1999 WL 145905, at *1 (Mar. 15, 1999).

Filing suit in the U.S. District Court here, Road Sprinkler claimed (1) that the BAT decision conflicts with the NLRB's definition of "collective bargaining agent" as well as its remedy for Grinnell's unfair labor practice; (2) that in determining Road Sprinkler's representation status, the BAT improperly acted in an NLRA-preempted area; and (3) that the agency unreasonably interpreted its own regulations in violation of the Administrative Procedure Act, 5 U.S.C. § 706. In response, the Department argued that the BAT's decision has no impact on the labor laws, that in any event the decision is consistent with *Detroit Newspaper,* and that the BAT's interpretation of section 29.3 was reasonable and therefore worthy of deference. Agreeing, the district court entered summary judgment for the Department. Road Sprinkler appeals. Our review is *de novo. See Everett v. United States,* 158 F.3d 1364, 1367 (D.C.Cir.1998).

## II

■ Before addressing Road Sprinkler's arguments, we must consider Grinnell's claim, not embraced by the Department, that we lack jurisdiction. According to Grinnell, the APA "is not to be interpreted as an implied grant of subject-matter jurisdiction" to the federal courts. *See Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Grinnell overlooks 28 U.S.C. § 1331, which gives federal courts what the APA does not: "jurisdiction of all civil actions arising under the ... laws ... of the United States," including those brought under the APA. *See Saavedra Bruno v. Albright,* 197 F.3d 1153, 1162 (D.C.Cir.1999). The company also claims, again without Department support, that Road Sprinkler lacks standing; because Road Sprinkler is not the collective bargaining agent of the replacement workers, Grinnell argues, the union has not been injured by the BAT's failure to seek its consent. This cannot be. Whether Road Sprinkler has a right under BAT regulations to veto Grinnell's new apprenticeship program is precisely the question before us. Recasting such questions as jurisdictional would deny standing to all litigants with unmeritorious claims. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (standing requires only that litigants allege a legally cognizable injury).

Having satisfied ourselves that we have jurisdiction, we turn to Road Sprinkler's first claim—that the BAT's determination that the union does not represent the striker replacement workers violates the NLRB's established rule that a bargaining unit is composed of all employees, including "nonstrikers, strikers, returning strikers and striker replacements employed at the time of the refusal to bargain." *Nat'l Upholstering Co.*, 311 N.L.R.B. 1204, 1210 (1993). Because the NLRB has exclusive jurisdiction to make representation decisions within the meaning of the NLRA, *see Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 155, 61 S.Ct. 908, 85 L.Ed. 1251 (1941) ("[A]fter [an NLRB representation order] the employer may not be compelled by any other agency of the government to perform any acts inconsistent with that order."), the union also argues that the BAT's departure from the *National Upholstering* definition encroaches on an NLRA-preempted area. We disagree.

The BAT has done nothing more than resolve Road Sprinkler's representation status under agency regulations, not under the NLRA. Simply determining the circumstances in which Grinnell may legally pay sub-minimum wages to apprentices, the BAT's action in no way interferes with the NLRB's area of concern: union authority to bargain about the provisions (including those relating to apprenticeship training programs) of collective bargaining agreements. *See Washington Serv. Contractors Coalition v. Dist. of Columbia*, 54 F.3d 811, 816–17 (D.C.Cir.1995) (holding that labor law preemption does not apply to laws that regulate employment without "disturb[ing] the labor dispute resolution system established by the NLRA."). Because the BAT and NLRB concern themselves with different questions, the phrase "collective bargaining agent" need not mean the same to each. Given the BAT's broad discretion to interpret its own regulations, *see Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.*, 194 F.3d 125, 128

(D.C.Cir.1999), we defer to its decision that Road Sprinkler is not the replacement workers' collective bargaining agent for the purposes of section 29.3.

Even if the BAT had to follow NLRB precedent, moreover, Road Sprinkler's argument would fail. Although replacement workers are technically members of the collective bargaining unit and hence eligible to vote in representation elections, *see Nat'l Upholstering*, 311 N.L.R.B. at 1210, the NLRB has now made clear in *Detroit Newspaper* that employers need not bargain with unions striking over unfair labor practices about terms and conditions of employment for replacement workers. In light of *Detroit Newspaper*, we agree with the BAT that it would be "anomalous ... [to] deny [the company] registration to [its] program on the premise that [it] was legally required to bargain with the union over apprenticeship terms applicable to such workers." Letter from Anthony Swoope, Director, BAT, to William J. Osborne, Jr., Atty. for Appellant 2 (Oct. 3, 1999). Road Sprinkler's response—that *Detroit Newspaper* changed only the subjects of bargaining and not the definition of "collective bargaining agent"—is technically correct. But Road Sprinkler ignores the fundamental proposition underlying *Detroit Newspaper*: that striking unions should have no authority to negotiate over terms and conditions of employment for replacement workers.

*Detroit Newspaper* also answers Road Sprinkler's second argument: that the BAT's switch from reliance on subsection (h) to subsection (i) was arbitrary and capricious. It switched, the BAT explains, because after *Detroit Newspaper*, it no longer considered Road Sprinkler the replacement workers' collective bargaining agent within the meaning of subsection (i). How could it be arbitrary and capricious for an agency to change its position in response to new legal developments?

Equally without merit is Road Sprinkler's related challenge that the BAT's understanding of the relationship between subsections (h) and (i) is unreasonable. Reading subsection (i) as creating a residual category that allows unilateral employer programs only where subsection (h) does not apply, Road Sprinkler claims that section 29.3 requires the BAT to first determine the need for union consent under subsection (h). But the agency sees the relationship between subsections (h) and (i) quite differently: when subsection (i) permits a unilateral employer program, subsection (h) need not be considered. Faced with two reasonable interpretations of a regulatory scheme, we defer to the agency's. *See Arrow Air, Inc. v. Dole*, 784 F.2d 1118, 1126 (D.C.Cir.1986).

Finally, Road Sprinkler argues that the BAT's certification of Grinnell's apprenticeship program conflicts with the NLRB remedy for the company's unfair labor practice. By requiring the employer to reinstate the terms and conditions of employment as they existed before the violation, Road Sprinkler claims that the NLRB has obliged the company to enroll striker replacements in the jointly-administered apprenticeship program. Road Sprinkler confuses BAT certification with Grinnell's use of its new unilateral program. The BAT has merely given the company a means of training striker replacements. Whether Grinnell's decision to train replacement workers in this new program would violate the remedial order is a matter for the NLRB.

The order of the district court is affirmed.

*So ordered.*