MCI WORLDCOM NETWORK SER-
VICES, INC. and MCImetro Access
Transmission Services LLC, Petition-
ers,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Verizon Communications, Intervenor.

No. 00–1406.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 2001.

Decided Dec. 28, 2001.

Jodie L. Kelley argued the cause for petitioners. With her on the briefs were Donald B. Verrilli Jr., Lara M. Flint, Thomas F. O'Neil III and William Single IV.

Rodger D. Citron, Counsel, Federal Communications Commission, argued the cause for respondent. On the brief were John Rogovin, Deputy General Counsel, John E. Ingle, Deputy Associate General Counsel, and Laurel R. Bergold, Counsel. Laurence N. Bourne, Counsel, Andrea Limmer and Catherine G. O'Sullivan, Attorneys, U.S. Department of Justice, entered appearances.

J.C. Rozendaal argued the cause for intervenor. With him on the brief were Mark L. Evans and Michael E. Glover.

Before: GINSBURG, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

MCI Worldcom Network Services, Inc., and MCImetro Access Transmissions Services, LLC (collectively "MCI") petition this Court for review of the Federal Communications Commission's ("FCC" or "Commission") order dismissing its complaint against Bell Atlantic Corporation (now Verizon Communications, Inc.[1]), in which MCI alleged that Bell Atlantic violated the pricing requirement set forth by the FCC in its order approving the merger of Bell Atlantic and NYNEX Corporation. *See* Memorandum Opinion and Order, *AT&T Corp. v. Bell Atlantic Corp., and MCI Telecommunications Corp., et al. v. Bell Atlantic Corp.*, 15 FCC Rcd 17066 (2000) ("*Dismissal Order*"). In the *Dismissal Order* the FCC reasoned that the proper forum for MCI's complaint was the state public utility commissions, pursuant to 47 U.S.C. § 252 (2000), and that the merger order imposed no cost methodology requirement that is not independently applicable in such section 252 proceedings. MCI alleges that the dismissal was arbitrary and capricious, effectively nullifying the merger order pricing requirement. Because the FCC did not act unreasonably in declining to enforce the merger order requirement in what amounts to a parallel and duplicative proceeding under 47 U.S.C. § 208, we deny the petition for review.

## I. Background

### A. Statutory and Regulatory Framework

The Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, codified at 47 U.S.C. §§ 151–276 ("the Act"), was enacted to bring about market competition in the local telephone service market. As part of its comprehensive scheme, it requires incumbent local telephone service providers to interconnect with new market entrants, and to allow these new entrants to lease elements that make up the local network to provide local telecommunications service. *See* 47 U.S.C. § 251 (2000).

---

1. For clarity, we will refer to this company as "Bell Atlantic."

The Act mandates that the rates for interconnection and access to unbundled network elements be "just and reasonable" and "based ... on cost." *Id.* at § 252(d)(1). The Act further expressly provides that a "State [public utility] commission" must, in arbitration proceedings, "establish ... rates for interconnection, services, or network elements." *Id.* at § 252(c)(2). However, Congress empowered the FCC to prescribe the general methodology to be used by the state commissions in setting these rates. *See id.* at § 252(d)(1); *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 385, 119 S.Ct. 721, 733, 142 L.Ed.2d 835 (1999) (holding "that the Commission has jurisdiction to design a pricing methodology"). Thus Congress created a kind of "intergovernmental partnership" with a division of responsibility between the FCC and the states. *Michigan v. EPA*, 268 F.3d 1075, 1078 (D.C.Cir. 2001); *cf. Virginia v. EPA*, 108 F.3d 1397, 1408 (D.C.Cir.1997) (describing a partnership between the states and the federal government as an "experiment in federalism").

Pursuant to section 252(d)(1), the FCC issued its *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 FCC Rcd 15499, *modified on recon.*, 11 FCC Rcd 13042 (1996) ("*Local Competition Order*"), in which it set forth a forward-looking pricing methodology based on the so-called Total Element Long–Run Incremental Cost ("TELRIC") of a local network. TELRIC is a forward-looking cost methodology in which it is assumed that a carrier uses a hypothetical network with the most advanced and efficient technology available, at a significant reduction in cost over the network elements that are actually in use. *See Local Competition Order*, 11 FCC Rcd at 15850, ¶ 690. TELRIC is just one "particular species of forward-looking cost methodology." *Dismissal Order*, 15 FCC Rcd at 17071–72, ¶ 13. The *Local Competition Order* required the state public utility commissions to use a forward-looking methodology, specifically TELRIC, in setting rates. *See Dismissal Order*, 15 FCC Rcd at 17069, ¶ 7.

The *Local Competition Order* and the division of labor between the state commission and the FCC have been the subject of much litigation, with cases being consolidated in the U.S. Court of Appeals for the Eighth Circuit. *See Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 421 (8th Cir. 1996). That court originally ruled that the FCC lacked authority to issue pricing methodology regulations binding on the states. *Iowa Utils. Bd. v. FCC*, 120 F.3d 753 (8th Cir.1997). The Supreme Court reversed in *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). On remand, the Eighth Circuit agreed with the FCC that it could prescribe use of a forward-looking cost methodology under the 1996 Act, but invalidated the FCC's particular pricing methodology–TELRIC. *Iowa Utils. Bd. v. FCC*, 219 F.3d 744 (8th Cir.2000). That decision is currently before the Supreme Court, *Verizon Communications v. FCC*, 531 U.S. 1124, 121 S.Ct. 877, 148 L.Ed.2d 788 (2001) (granting certiorari), where oral argument was held on October 10, 2001.

### B. The Bell Atlantic/NYNEX Merger

Bell Atlantic (which became Verizon as part of a subsequent merger with GTE Corporation) and NYNEX announced their intent to merge on April 23, 1996, and sought FCC approval of the transfer of licenses. On August 14, 1997, the FCC approved the merger, but with nine conditions that would remain in effect for a four-year period. *See* Memorandum Opinion and Order, *Applications of NYNEX Corp., Transferor, and Bell Atlantic Corp., Transferee, For Consent to Transfer Control of NYNEX Corp. and Its Sub-*

*sidiaries,* 12 FCC Rcd 19985, 20069–79 (1997) ("*Merger Order*"). The *Merger Order* outlines significant concerns over the harm to competition that would be caused by the Bell Atlantic/NYNEX merger. *See id.* at 20008–63. In response to the concerns, on "July 19, 1997, Bell Atlantic and NYNEX submitted an *ex parte* filing proffering a number of specific commitments they would undertake as conditions of the approval of the transfer of [the] licenses." *Id.* at 20069, ¶ 178. Based on these commitments, the FCC proceeded to approve the merger. *See id.* The FCC concluded that "these commitments are sufficient to outweigh the harm to the public interest," and approved the merger, subject to the nine voluntary conditions set forth by the FCC in Appendix C of the *Merger Order. Id.* at 20069, ¶ 179. The conditions are: 1) The preparation of Performance Monitoring Reports; 2) providing uniform interfaces for use by carriers purchasing interconnection; 3) conducting operational testing of the interfaces; 4) proposing certain options for carriers purchasing interconnection; 5) providing shared transport based on forward-looking, economic costs; 6) proposing rates based upon forward-looking, economic cost; 7) engaging in good faith negotiations to establish performance standards; 8) a 48–month sunset provision; and 9) a commitment to negotiate requested supplements to existing agreements based on these conditions. *Merger Order,* 12 FCC Rcd at 20107–12, App. C ¶ ¶ 1–9. At issue in this appeal is Paragraph 6 of the conditions, which provides:

> To the extent Bell Atlantic/NYNEX proposes rates, including in interconnection negotiations and arbitrations, for interconnection, transport and termination, or unbundled network elements, including both recurring and non-recurring charges, any such proposal shall be based upon the forward-looking, economic cost to provide those items.

*Id.* at 20111, ¶ 6. The *Merger Order* was issued less than a month after the Eighth Circuit originally ruled that the FCC lacked authority to issue pricing methodology regulations binding on the states and vacated the FCC's pricing rules. *See Dismissal Order,* 15 FCC Rcd at 17069, ¶ 9.

### C. Proceedings Below

A few months after the release of the *Merger Order,* AT&T Corporation and MCI filed formal complaints with the FCC pursuant to 47 U.S.C. § 208, alleging Bell Atlantic had committed various violations of Paragraph 6 of the *Merger Order* in seven different jurisdictions. *See Dismissal Order,* 15 FCC Rcd at 17067, ¶ 4. AT&T and MCI argued that Bell Atlantic had not used TELRIC or a forward-looking cost methodology in setting rates. *See id.* at 17067–68, ¶ 4. The complainants sought FCC enforcement of the Paragraph 6 pricing condition of the *Merger Order* against Bell Atlantic. Bell Atlantic moved for the FCC to dismiss or deny the complaints and pointed out that the complainants already had litigated whether Bell Atlantic's proposed rates were based on forward-looking costs in state arbitration proceedings pursuant to 47 U.S.C. §§ 251 and 252. *See Dismissal Order,* 15 FCC Rcd at 17068, ¶ 6. Specifically, Bell Atlantic argued that the complainants' claims were either moot, as state commissions had already set rates, or should be dismissed "on the basis of comity," out of respect for the dominant role the 1996 Act assigns the states in setting rates. *See id.* Bell Atlantic also contended that MCI's complaint was wrong on the merits in two respects: The *Merger Order* only required that rates be based "upon the forward-looking, economic cost" and not necessarily TELRIC; and Bell Atlantic's rate proposals were in fact based on forward-looking costs as well as the specific requirements of TELRIC. *See id.* at 17068, ¶ ¶ 5–6.

During 1998, the parties conducted discovery and filed merits briefs. In early 1999, after the Supreme Court issued its ruling in *AT&T Corp. v. Iowa Utilities Board,* the FCC requested supplemental briefing. In March 2000, AT&T petitioned this Court for a writ of mandamus, seeking an order directing the FCC to decide the complaints. *In re AT&T Corp.,* No. 00–1133 (filed March 23, 2000), *dismissed as moot,* (D.C.Cir. Sept. 19, 2000). That petition was rendered moot when the FCC issued its order dismissing AT&T and MCI's complaints. *See id.*

In its *Dismissal Order,* the FCC observed that it had adopted Paragraph 6 of the *Merger Order* in light of the uncertainty created by the Eighth Circuit's vacatur of the generally applicable forward-looking pricing rules of the *Local Competition Order* in *Iowa Utilities Board v. FCC,* 120 F.3d 753 (8th Cir.1997). *See Dismissal Order,* 15 FCC Rcd at 17069, ¶ 9. It explained that Paragraph 6 was a gap-filling measure to replace the *Local Competition Order,* and that it was no longer necessary given the Supreme Court's reversal of the Eighth Circuit. *See id.* at 17071, ¶ 12.

The FCC stated that the regulatory objective underlying Paragraph 6 had been satisfied both by the state commissions' adoption of forward-looking pricing standards and the Supreme Court's reversal. *See id.* at 17069–70, ¶ 10. It rejected the argument that Paragraph 6 required the use of TELRIC. Rather, the *Merger Order* only required the use of *a* forward-looking cost methodology, without specifying any particular version. *See id.* at 17071–72, ¶ 13. The FCC observed that Paragraph 6 imposes "no cost methodology requirement that is not independently applicable in section 252 proceedings," and therefore "the substance of the pricing methodology that the state commissions have employed (and must continue to employ) in section 252 proceedings *wholly*

*subsumes* the substance of the merger condition [in Paragraph 6.]" *Id.* at 17071, ¶ 12 (emphasis added). The only question remaining was "whether, as a procedural matter, the merger condition compels [the FCC] to duplicate the rate inquiry that Congress entrusted to the state commissions and the federal courts on review." *Id.* The Commission concluded that duplication of the rate inquiry entrusted to the state commissions by statute "could unnecessarily raise substantial comity concerns," and rejected the argument that the *Merger Order* required it to adjudicate Bell Atlantic's compliance with Paragraph 6 through a section 208 proceeding. *Id.* Instead, it ruled that a section 208 proceeding was inappropriate because the "merger condition was designed to ensure the use of a forward-looking cost methodology *as a substantive matter*; it was not independently designed to bypass the *statutory procedural framework* for ensuring compliance with that methodology under section 252." *Id.* (emphasis added). The Commission dismissed MCI's and AT&T's complaints with prejudice. *Id.* at 17072, ¶ 14.

MCI sought review of the *Dismissal Order* in this Court. AT&T did not.

### II. Analysis

MCI contends that the *Dismissal Order* "represents a fundamental departure from prior policy, effectively eliminating a critical requirement imposed on Bell Atlantic as a condition of the Commission's approval of the Bell Atlantic–NYNEX merger." Thus, at the heart of the dispute, MCI argues that the FCC failed to provide an adequate explanation for this alleged departure, and therefore the *Dismissal Order* is arbitrary and capricious.

 The *Dismissal Order* is subject to reversal if the agency's action was "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). This is a " 'deferential standard' that 'presume[s] the validity of agency action.' " *Global NAPs, Inc. v. FCC,* 247 F.3d 252, 257 (D.C.Cir. 2001) (quoting *Southwestern Bell Tel. Co. v. FCC,* 168 F.3d 1344, 1352 (D.C.Cir. 1999)). "[T]he Court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The Court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). In making this assessment, we review an agency's interpretation of its own regulations under a highly deferential standard.[2] *See Omnipoint Corp. v. FCC,* 78 F.3d 620, 631 (D.C.Cir.1996). We give "an agency's interpretation of its own regulation 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Associated Builders and Contractors, Inc. v. Herman,* 166 F.3d 1248, 1254 (D.C.Cir.1999) (quoting *Military Toxics Project v. EPA,* 146 F.3d 948, 954 (D.C.Cir.1998)). Moreover, "it is well established that an agency's interpretation of the intended effect of its own orders is controlling unless clearly erroneous." *Southwest Gas Corp. v. FERC,* 145 F.3d 365, 370 (D.C.Cir.1998) (citation and internal quotation marks omitted).

In this case, the FCC contends that the purpose of its *Merger Order* was to ensure, insofar as possible in light of the uncertainty created by the Eighth Circuit's (now-overruled) jurisdictional ruling in *Iowa Utilities Board v. FCC,* 120 F.3d 753 (8th Cir.1997), that "Bell Atlantic–

NYNEX's rates would be based upon a forward-looking cost methodology." Thus the purpose was a *substantive* one, not intended to create a *procedural* bypass of the section 252 procedure specified by Congress. However, the FCC submits that those objectives were achieved, both by the voluntary actions of all of the relevant state commissions and by the reinstatement of the general forward-looking cost requirement of the pricing rules by the Supreme Court. *See Dismissal Order,* 15 FCC Rcd at 17069–71, ¶ ¶ 10, 12. To the extent that any uncertainty remains over the authority of the Commission to mandate that a carrier calculate its prices according to TELRIC, it is irrelevant, as the *Merger Order* only requires the use of *a* forward-looking methodology, and not necessarily TELRIC. *See Iowa Utils. Bd. v. FCC,* 219 F.3d 744, 750–52 (8th Cir.2000) (holding "the FCC's use of a forward-looking cost methodology was reasonable," but rejecting the use of a "hypothetical" network standard); *Dismissal Order,* 15 FCC Rcd at 17071–72, ¶ 13 ("Although the Eighth Circuit invalidated some aspects of our pricing rules, it affirmed our requirement that UNE rates be based on forward-looking rather than historical costs.").

Therefore, the FCC submits that this case "is not about whether the Commission should or will continue to require Bell Atlantic–NYNEX to base it rates upon forward-looking costs." There has been no change in its policy, as the *Local Competition Order* affirmatively obligates *all* Local Exchange Carriers ("LECs"), including Bell Atlantic, to base their interconnection and element rates upon a forward-looking cost methodology. In short, the FCC reasons that it did *not* decide that Bell Atlantic–NYNEX should be free

---

**2.** The *Local Competition Order,* while styled an "order," is not the product of adjudication,

but rather partakes of the nature of regulation.

of the substantive requirement that it base its rates upon forward-looking costs; instead, it dismissed MCI's complaint because MCI can obtain (and, in the relevant states, either has obtained or is in the process of obtaining) redress for any violations of the forward-looking cost requirement by Bell Atlantic–NYNEX through the section 252 process.

In the *Merger Order*, the Commission did suggest that MCI could seek enforcement of the order through a proceeding other than that specified in § 252. Specifically, the Commission observed that MCI could object to a violation through, for example, a complaint pursuant to § 208, opposition to an application by Bell Atlantic for a radio license under § 309, or opposition to an application for a certificate of convenience and necessity under § 214. *See Merger Order*, 12 FCC Rcd at 20075–76, ¶ 191. The Commission now declares that it will not consider MCI's complaint under section 208 because to do so would "duplicate the rate inquiry that Congress entrusted to the state commissions." *Dismissal Order*, 15 FCC Rcd at 17071, ¶ 12.

We have recognized that the Commission is "entitled to reconsider and revise its views as to the public interest and the means to protect that interest," so long as it gives a reasoned explanation for the revision. *DIRECTV, Inc. v. FCC*, 110 F.3d 816, 826 (D.C.Cir.1997). With the state commissions having adopted the substance of Paragraph 6, the Commission determined that the reduced need for hearings under section 208 as a means of enforcing the *Merger Order* no longer could justify the threat to comity that the hearings would entail. *See Dismissal Order*, 15 FCC Rcd at 17071, ¶ 12. To the extent that the *Dismissal Order* departed from the policy stated in the *Merger Order*, the change was therefore a reasonable exercise of the agency's discretion.

The Commission noted that MCI took the opportunity to litigate in each of the seven relevant state jurisdictions on whether Bell Atlantic–NYNEX's rates are based upon forward-looking costs, and presented the same substantive arguments that it now asks the FCC to adjudicate in its section 208 complaint. *See Dismissal Order*, 15 FCC Rcd at 17071, ¶ 12. The FCC contends that the real issue is whether MCI, by challenging Bell Atlantic–NYNEX's compliance with Paragraph 6 in a section 208 complaint proceeding, can require the Commission to re-litigate the same substantive issues already decided (or soon to be decided) by state public utility commissions and federal courts in fulfilling their statutorily defined duties, and concludes that it cannot.

Given the presumption of validity and the high level of deference due to an agency in interpreting its own orders and regulations, *see Southwest Gas Corp.*, 145 F.3d at 370; *Associated Builders*, 166 F.3d at 1254, we cannot say that the FCC acted unreasonably in declining to enforce the Paragraph 6 condition of the *Merger Order* in a parallel and duplicative section 208 proceeding. MCI seeks no relief from the FCC that the state public utility commissions cannot grant in their capacity as arbitrators under section 252. Regardless of whether the FCC could offer some additional relief, it would be entirely reasonable for the FCC to defer to the states as a matter of comity. *See Dismissal Order*, 15 FCC Rcd at 17071, ¶ 12. At oral argument, we noted the potential for a procedural nightmare in which the FCC reached a different conclusion as to whether rates were "forward-looking," from a federal district court, based on the same body of evidence. A federal court, reviewing a state public utility commission's arbitration, might conclude that forward-looking rates had been applied, and yet, the FCC

conclude that the exact same rates, proposed by Bell Atlantic, were not forward-looking. By deferring to the statutorily defined role of the state public utility commissions, the FCC reasonably avoids this quagmire. *Cf. Neal v. United States,* 516 U.S. 284, 295, 116 S.Ct. 763, 768–69, 133 L.Ed.2d 709 (1996) ("Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of *stare decisis,* and we assess an agency's later interpretation of the statute against that settled law.").

Moreover, all parties fully recognize Bell Atlantic–NYNEX's *legal* obligation to base its rate upon forward-looking costs. Although some uncertainty lingers as to the future of TELRIC, all the *Merger Order* requires is the use of *a* forward-looking methodology. *See Dismissal Order,* 15 FCC Rcd at 17071–72, ¶ 13. Therefore, as noted by the FCC, the dispute between MCI and Bell Atlantic "centers upon *factual* issues," and will center upon those factual issues whether the case is litigated before the FCC as a section 208 proceeding or state commissions through the section 252 process. At issue are prices for complex network elements and inputs— and each category would have to be calculated for each of the *seven* jurisdictions, taking into account the unique circumstances in each location. The Commission's task in adjudicating the merits of MCI's complaint thus would be larger than the task confronting any individual state commission. Contrary to MCI's assertion, there is no great streamlining to be gained should the FCC adjudicate the issue, as it would have to consider the relevant facts on a state-by-state basis too. The FCC is reasonable in its conclusion that these disputes are as readily resolved in the section 252 process as in a section 208 complaint. *See Dismissal Order,* 15 FCC Rcd at 17071, ¶ 12 (observing Paragraph 6 "imposes no cost methodology requirement that is not independently applicable [by

enforcement of the FCC's pricing rules] in section 252 proceedings"). We agree with the FCC that any alleged shortcomings in the section 252 process do not undercut the Commission's reliance on the statutory role of the state commissions and federal district courts in setting rates—and any complaints about the efficacy of section 252 procedures are better addressed to Congress than to this Court.

### III. Conclusion

The FCC's *Dismissal Order* does not work a change in the Commission's substantive policy of requiring incumbent carriers to use a forward-looking methodology in determining interconnection rates for new market entrants. The FCC's determination that the conditions imposed in Paragraph 6 of the *Merger Order* were "wholly subsume[d]" by the Supreme Court's reinstatement of the *Local Competition Order* is not unreasonable. *See Dismissal Order,* 15 FCC Rcd at 17071, ¶ 12. Because it was not unreasonable for the FCC to decline to engage in an inquiry that duplicates the function given state public utility commissions and the federal courts by law in the Telecommunications Act of 1996, 47 U.S.C. § 252, we deny the petition for review.