# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2010         Decided May 17, 2011

No. 10-1003

METROPCS CALIFORNIA, LLC,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

———

On Petition for Review of an Order
of the Federal Communications Commission

———

*Stephen B. Kinnaird* argued the cause for petitioner. With him on the briefs were *Carl W. Northrop* and *Michael Lazarus*.

*Laurence N. Bourne*, Counsel, Federal Communications Commission, argued the cause for respondent. With him on the brief were *Catherine G. O'Sullivan* and *Robert J. Wiggers*, Attorneys, U.S. Department of Justice, *Austin C. Schlick*, General Counsel, Federal Communications Commission, *Jacob M. Lewis*, Acting Deputy General Counsel, and

*Richard K. Welch*, Deputy Associate General Counsel. *Robert B. Nicholson*, Attorney, U.S. Department of Justice, and *Daniel M. Armstrong III*, Associate General Counsel, Federal Communications Commission, entered appearances.

Before: BROWN, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Providers of commercial mobile radio services must pay "reasonable compensation" to local exchange carriers for traffic that starts with the provider and ends in the carrier's network. 47 C.F.R. § 20.11(b)(2). The question in this case is whether the Federal Communications Commission erred in allowing a state agency to determine this rate for traffic that is wholly intrastate. For the reasons set forth below, we conclude that the FCC acted within its discretion and deny the petition for review.

I

Petitioner MetroPCS California, LLC, is a provider of commercial mobile radio services (CMRS) in California, and North County Communications Corporation is a California local exchange carrier (LEC) on whose network some of MetroPCS's traffic ends. All of the traffic between these two networks flows from MetroPCS to North County and takes place wholly within California. LECs like North County provide wired telephone service within a geographic region known as the local access and transport area (LATA). Calls travel over an LEC's network in a number of ways. Some originate within the LATA. Others arrive from outside the LATA via long-distance carrier, or, more recently, by radio telecommunications or voice-over-IP. Regardless of its source, the receiving LEC must ensure the call gets to the intended recipient, a service referred to as "terminating the

traffic." The CMRS must pay the LEC "reasonable compensation" for that service. *See id.*

The dispute in this case arose when, in the absence of an agreement, North County unilaterally set a rate and began billing MetroPCS for the cost of terminating its traffic. MetroPCS refused to pay, and North County filed a complaint with the FCC alleging a violation of Rule 20.11(b).

Citing its policy of leaving the setting of termination rates for intrastate traffic to state authorities, the FCC ruled that it would hold the complaint in abeyance while North County petitioned the California Public Utilities Commission (CPUC) to set a rate. MetroPCS challenges this approach, arguing that the FCC must either set the rate itself or, at a minimum, issue guidance to the CPUC on how to set a reasonable rate. We have jurisdiction to review the FCC's Order pursuant to 28 U.S.C. § 2342(1).

Under the Administrative Procedure Act, we hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We review the FCC's interpretation of the Communications Act under the aegis of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), giving effect to clear statutory text and deferring to an agency's reasonable interpretation of any ambiguity. We afford the FCC deference in interpreting its own regulations. *MCI WorldCom Network Servs., Inc. v. FCC*, 274 F.3d 542, 547 (D.C. Cir. 2001).

II

MetroPCS argues that the FCC abused its discretion when it declined to set the "reasonable compensation" required by Rule 20.11(b)(2) and instead left that task to the CPUC. The FCC, MetroPCS contends, must set this rate

itself. Its argument begins with section 332 of the Communications Act, which grants the FCC authority to regulate commercial mobile services, 47 U.S.C. § 332(c), and specifically provides that "[u]pon reasonable request" of a CMRS provider, "the Commission shall order a common carrier [such as an LEC] to establish physical connections with such service pursuant to the provisions of section 201." *Id.* § 332(c)(1)(B). Section 201, in turn, requires that "[a]ll charges . . . and regulations" relating to traffic that results from such connections "be just and reasonable." *Id.* § 201(b). And Rule 20.11(b) specifically requires interconnected CMRS providers and LECs to pay each other "reasonable compensation" for terminating traffic. MetroPCS reads the interplay of sections 332 and 201 and Rule 20.11(b) to require the FCC, when asked, to set termination rates for traffic between CMRS providers and LECs, even traffic that is wholly intrastate. MetroPCS acknowledges a jurisdictional divide that leaves to the states authority over "charges . . . or regulations for or in connection with intrastate communication service," *id.* § 152(b). But it argues that Congress intended the FCC alone to regulate mobile radio services, as evidenced by the fact that section 152(b) applies "[e]xcept as provided in . . . section 332." *Id.*

While conceding the federal interest in the establishment of reasonable rates for terminating the traffic of a CMRS provider, the FCC argues that there is nothing in the Communications Act or Rule 20.11(b) that requires the FCC to be the instrumentality that actually sets the rates for wholly intrastate communications. The FCC asserts that the Communications Act and Rule 20.11(b) leave the agency free to do what it did here: order North County to first seek a rate from the CPUC. We agree. The provisions upon which MetroPCS relies demonstrate at most that the FCC is charged with ensuring reasonable rates for mobile radio services, even those that are wholly intrastate. But the authority to regulate

intrastate termination rates does not require the FCC to set them in every instance. There are a number of ways the FCC can ensure a rate is just and reasonable short of setting the rate itself, not least of which is reviewing the rate after it is set by state regulatory authorities. In fact, the Communications Act gives the FCC broad discretion to determine when "establish[ing] . . . charges" would be "necessary or desirable in the public interest," *id.* § 201(a), and it is well established that we afford "substantial judicial deference" to the FCC's judgments on the public interest, *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981). This discretion includes allowing the state agency to exercise its traditional authority to set rates for wholly intrastate communication services.

In the absence of statutory text plainly requiring otherwise, we have little trouble concluding under *Chevron* step two that the FCC reasonably determined that the FCC had no duty to set the rates for the wholly intrastate traffic at issue here. The FCC's policy of allowing state agencies to set such rates is consistent with the dual regulatory scheme assumed in the Communications Act, which grants the FCC authority over interstate communications but reserves wholly intrastate matters for the states. *See* 47 U.S.C § 151 (providing the FCC "shall execute and enforce the provisions of this chapter"); *id.* § 152(a) ("The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio . . . ."); *id.* § 152(b) ("[N]othing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to . . . charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier"). Of course, that divide is neither absolute nor always clear, and the Supreme Court has recognized the FCC may regulate intrastate matters "where it [is] not possible to separate the interstate and the intrastate components of the asserted FCC regulation." *See La. Pub.*

*Serv. Comm'n v. FCC*, 476 U.S. 355, 375 n.4 (1986) (emphasis omitted).

Accordingly, the FCC has determined that it was possible to require reasonable compensation under Rule 20.11(b) without preempting the states' traditional authority to set rates for terminating intrastate traffic. *See In re Implementation of Sections 3(n) and 332 of the Communications Act; Regulatory Treatment of Mobile Servs.*, Second Report and Order, 9 FCC Rcd. 1411, ¶ 231 (1994) ("LEC costs associated with the provision of interconnection for interstate and intrastate cellular services are segregable."). The FCC made clear, however, that it would not hesitate to preempt any rates set by the states that would undermine the federal policy that encourages CMRS providers and LECs to interconnect. *See id.* ¶ 228. This is consistent with what Congress intended.

The FCC has done no differently in subsequent orders. *See, e.g.*, *In re Developing a Unified Intercarrier Compensation Regime; T-Mobile et al. Pet. for Declaratory Ruling Regarding Incumbent LEC Wireless Termination Tariffs*, Declaratory Ruling and Report and Order, 20 FCC Rcd. 4855, ¶ 10 n.41 (2005) (declining "to preempt state regulation of LEC intrastate interconnection rates applicable to CMRS providers"); *In re AirTouch Cellular v. Pac. Bell*, 16 FCC Rcd. 13502, ¶ 14 (2001) ("[A]lthough LECs were required to pay mutual compensation to CMRS carriers for intrastate traffic pursuant to Commission rules, the determination of the actual rates charged for intrastate interconnection would be left to the states."). Similarly, the FCC here refused "to preempt state regulation of intrastate rates that LECs charge CMRS providers for termination," instead determining that the CPUC "is the more appropriate forum for determining a reasonable [termination] rate" for wholly intrastate traffic. *North County Commc'ns Corp. v. MetroPCS Cal., LLC*, 24 FCC Rcd. 14036, ¶¶ 1, 14 (2009).

This result reflects how Rule 20.11(b) has worked from the start, and accords with how the Communications Act operates generally. That seems perfectly reasonable to us.

A different conclusion is not warranted by MetroPCS's concern that allowing states to set intrastate rates will create a patchwork of regulatory schemes throughout the states and undermine Congress's understanding that "mobile services . . . by their nature, operate without regard to state lines as an integral part of the national telecommunications infrastructure." H.R. REP. NO. 103-111, at 490 (1993). The FCC's policy allows state agencies to set intrastate termination rates only insofar as the state regulations do not interfere with federal policies. That is the case here, as allowing state agencies to set intrastate termination rates furthers the federal policy of encouraging and compensating interconnection while retaining the dual regulatory structure created by subsections 152(a) and (b) of the Communications Act. That there are fifty states to deal with in the context of intrastate services is a consequence of congressional respect for federalism, not the FCC's approach. More fundamentally, the FCC's reasonable reading of the Communications Act and Rule 20.11(b) is not disturbed by MetroPCS's wish that the FCC do it all, which finds no expression in the statute. *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 726 (1995) (Scalia, J., dissenting) ("'The Act must do everything necessary to achieve its broad purpose' is the slogan of the enthusiast, not the analytical tool of the arbiter.").

## III

MetroPCS's remaining arguments fare no better. It argues that the FCC did not adequately explain why the CPUC was a "more appropriate forum" for setting intrastate rates in California. But the Commission's Order clearly states

8

that its position is, and always has been, that intrastate termination rates are the business of states, and that Rule 20.11(b) does not disturb this. *See North County*, 24 FCC Rcd. 14036. The Order acknowledged the various policy arguments raised by MetroPCS, particularly about avoiding a patchwork of state regulations in the face of companies who generate only inbound traffic, but concluded that "[w]hether to depart so substantially from such long-standing and significant Commission precedent [and to proceed to regulate intrastate rates on this basis] is a complex question better suited to a more general rulemaking proceeding." *Id.* ¶ 16 (internal quotation omitted).

Finally, MetroPCS argues that the FCC acted arbitrarily when it refused to give guidance to the CPUC on how to determine a reasonable rate. According to MetroPCS, such guidance is critical and required by section 201. This is but a different telling of the same argument that we have already rejected. That the FCC *can* issue guidance does not mean it must do so. And to do so here would hardly be consistent with the longstanding policy of leaving wholly intrastate matters to the states.

## IV

For the foregoing reasons, the petition for review is

*Denied.*